Slip Op. 02 - 78

# UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————— :
:
CARNIVAL CRUISE LINES, INC., :
HAL ANTILLEN, N.V., :
HAL SHIPPING LTD., and :
WIND SURF LIMITED, :
:
: **Before: MUSGRAVE, JUDGE**
Plaintiffs, :
: Consol. Court No. 93-10-00691
v. :
:
THE UNITED STATES, :
:
Defendant. :
:
—————————————————————— :

[On remand, the Court considered Plaintiffs' arguments (1) that the Harbor Maintenance Tax ("HMT") should not be imposed on passenger cruises that begin and end at ports which are exempt from the HMT, but which make layover stops at ports covered by the HMT, and (2) that the "value" on which the HMT is assessed should only be the actual cost of transportation. Defendant argued that the Court of Appeals for the Federal Circuit decided in *Princess Cruises, Inc. v. United States*, 201 F.3d 1352 (Fed. Cir. 2000), that layover stops alone give rise to HMT liability and that this Court is bound to follow that decision. Defendant also argued that the Court should defer to Customs' rulings on the proper calculation of the "value" of the cruise on which the HMT is assessed. **Held:** (1) Based on the Federal Circuit's decision in *Princess*, Plaintiffs are liable for payment of the HMT on passengers who disembark the ship at layover ports covered by the HMT, but only after the issuance of HQ 112511 (Jan. 27, 1993), which resolved the ambiguity in the statute and regulation on this issue; (2) Customs' method of calculating the "value" of the cruise fare for HMT assessment purposes is correct except for the inclusion of "port taxes," charges for "U.S. Customs and U.S. Immigration and Naturalization services," and the inclusion of charges for airfare and certain land-based services and commissions prior to 1993, which are inconsistent with the HMT statute. Plaintiff's motion for partial summary judgment is granted in part, and Defendant's motion for summary judgment is granted in part.]

Dated: July 31, 2002

*Paul, Weiss, Rifkind, Warton & Garrison* (*Robert E. Montgomery, Jr.* and *Robert P. Parker*) for Plaintiffs.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Lara Levinson* and *Michael Duclos*), and *Richard McManus*, Office of Chief Counsel, United States Customs Service, of counsel, for Defendant.

## OPINION

In this action, plaintiffs Carnival Cruise Lines, Inc., HAL Antillen, N.V., HAL Shipping, Ltd., and Wind Surf Limited (collectively "Carnival") contest the assessment and collection of the Harbor Maintenance Tax ("HMT")[1] on passenger cruise ships by defendant the United States Customs Service ("Customs"). This matter began in 1992 when Customs audited the HMT paid by HAL Antillen for the period from April 1, 1987 through December 31, 1991 and assessed $322,311.00 for alleged underpayments. According to an August 20, 1992 letter from the Regional Director of Customs' Regulatory Audit Division the underpayments resulted from HAL Antillen's failure to pay the HMT for cruises that made only layover stops at ports subject to the HMT and its deduction of travel agents' commissions from the "value" of the cruise fare on which the HMT was based. After receiving formal notification of the audit results on April 6, 1993, HAL Antillen filed a timely protest. On October 6, 1993 it requested accelerated disposition its protest pursuant to 19 C.F.R § 174.22(a). After receiving no decision for 30 days, the protest was deemed denied pursuant to 19 C.F.R § 174.22(d) on November 5, 1993.

Carnival commenced this action in October 1993 and an appeal from the denial of HAL

---

[1] The HMT is a tax on port use calculated at a rate of 0.125 percent of the value of the commercial cargo. It was enacted pursuant to the Water Resources Development Act of 1986, Pub. L. No. 99-662, Title XIV, § 1402, 100 Stat. 4266 (1986), and is codified at 26 U.S.C. § 4461-62.

Antillen's protest was added by an amended complaint. Subsequently, Carnival moved for partial summary judgment on the issues of (1) whether the HMT should be assessed on cruises that begin and end at ports that are exempt from the tax, but make layover stops at ports subject to it, and (2) whether the "value" of the cruise on which the HMT is assessed should include anything more than the actual cost for transportation. Following the Supreme Court's decision in *United States Shoe Corp. v. United States*, 523 U.S. 360 (1998), *aff'g* 114 F.3d 1564 (Fed. Cir. 1997), *aff'g* 19 CIT 1284, 907 F. Supp. 408 (1995), holding the HMT unconstitutional as applied to exports, Carnival amended its complaint a second time adding a constitutional challenge. This Court held that the HMT was unconstitutional as applied to passenger cruises; therefore it did not reach the other issues raised by Carnival. *See Carnival Cruise Lines, Inc. v. The United States*, 22 CIT 486, 8 F. Supp. 2d 877 (1998). The Court of Appeals for the Federal Circuit reversed this Court's holding on the constitutional issue and remanded this action for consideration of the remaining legal issues. *See Carnival Cruise Lines, Inc. v. United States*, 200 F.3d 1361, 1369 (Fed. Cir. 2000).

For the reasons which follow, the Court holds that the Federal Circuit's decision in *Princess Cruises, Inc. v. United States*, 201 F.3d 1352 (Fed. Cir. 2000), is controlling on the issue of whether cruise lines are liable for the HMT when a vessel makes a layover stop at a port subject to the HMT. Nevertheless, since the Federal Circuit found that the law was ambiguous with respect to layover stops prior to the issuance of HQ 112511 (Jan. 27, 1993), the Court holds that cruise lines are not liable for the HMT on cruises which made only layover stops at HMT covered ports prior to January 27, 1993. The Court also holds that Customs should not have included "port taxes" and charges for "U.S. Customs and U.S. Immigration and Naturalization services" in the cruise "value"on which the

HMT is assessed, but was otherwise correct in assessing the HMT on the price paid for the cruise, exclusive of land-based services and commissions. Therefore, Carnival's motion for partial summary judgment is granted in part and Customs motion for summary judgment is granted in part.

### I. Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 1581(i) the Court has jurisdiction over Carnival's claim for restitution of the amount of HMT that it allegedly overpaid, and pursuant to 28 U.S.C. § 1581(a) the Court has jurisdiction over the counts in Carnival's First Amended Complaint appealing the denial of HAL Antillen's protest. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### II. Assessment of Harbor Maintenance Taxes for Layover Stops

The HMT is "a tax on any port use," 26 U.S.C. § 4461(a), and "port use" is defined as "the loading of commercial cargo on, or . . . the unloading of commercial cargo from a commercial vessel at a port," 26 U.S.C. § 4462(a)(1). "The term 'commercial cargo' means any cargo transported on a commercial vessel, including passengers transported for compensation or hire." 26 U.S.C. § 4462(a)(3)(A). Ports in Alaska, Hawaii, and possessions of the United States are exempt from the tax. 26 U.S.C. § 4462(b). Although the statute itself does not explain how the HMT is to be assessed on passengers, 19 C.F.R. § 24.24(e)(4) states that "when a passenger boards or disembarks

a commercial vessel at a port within the definition of this section, the operator of that vessel is liable for the payment of the port use fee." In HQ 112511 Customs addressed for the first time the issue of whether a passenger who "temporarily goes ashore and subsequently gets back on the vessel [at a layover stop] is considered to have 'disembarked' or 'boarded' at that port for purposes of 19 C.F.R. § 24.24(e)(4) so as to incur liability on behalf of the vessel operator for the payment of a port use fee." Customs concluded that cruise operators are liable for the HMT on passengers who leave the vessel at these interim stops and that there is a rebuttable presumption that every passenger does so.

Subsequently, this issue came before the Federal Circuit in an action brought by Princess Cruises. The Federal Circuit held that both 26 U.S.C. § 4461-62 and 19 C.F.R. § 24.24(e)(4) were ambiguous with regard to layover stops by cruise ships and gave *Chevron* deference[2] to Customs' interpretation of the regulation. *See Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1359 (Fed. Cir. 2000). The Federal Circuit concluded that:

> In light of the clear intent of Congress to impose a fee on all port use as revealed in the legislative history, the Customs interpretation including stopovers and layovers in the port use covered by the HMT is not unreasonable. The HMT is intended to charge those using the ports for the expense of maintaining the ports. It is not apparent to us that the use of the port to discharge passengers for shopping and sight-seeing in a port and then reboard those same passengers is any less of a use or has any less impact on the port than boarding or discharging passengers at the beginning or end of a cruise.

---

[2] Under the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), if a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "A court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

*Id.* at 1360.

In the present action, Carnival challenges Customs' assessment of the HMT for layover stops on grounds that it is inconsistent with the language of the act, the legislative history, and Customs' procedures. *See* Pl.s' Mot. for Partial Summ. J. at 13-25. Customs asserts that *Princess* is dispositive of this issue. *See* Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to Pl.s' Renewed Mot. for Partial Summ. J. at 12-13. Nevertheless, Carnival argues that *Princess* is no longer valid following the decisions in *United States v. Mead Corp.*, 533 U.S. 218 (2001), *aff'g*, 185 F.3d 1304 (Fed. Cir. 1999),[3] because the Customs ruling at issue was not adopted pursuant to the Administrative Procedure Act. *See* Mem. of Points and Authorities in Support of Pl.s' Renewed Mot. for Partial Summ. J. at 17 n.14. Therefore, Carnival concludes that the Court should consider its substantive legal arguments. Pl.s' Supplemental Mem. in Supp. of their Renewed Mot. for Summ. J. and in Opp'n to Def.'s Cross-Mot. for Summ. J. at 3-4.

The Court agrees with Customs that *Princess* is still valid precedent. Unlike the ruling in *Mead*, the ruling at issue in *Princess* did not interpret a statute, but interpreted a regulation that interpreted a statute. In *Auer v. Robbins*, 519 U.S. 452 (1997), the Supreme Court held that an agency's interpretation of its own regulation is controlling unless it is "plainly erroneous or inconsistent with the regulation." 519 U.S. at 461 (citation omitted). *See also Bowles v. Seminole*

---

[3] In *Mead* the Supreme Court held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." 533 U.S. at 226-27. "[R]elatively formal administrative procedure tending to foster . . . fairness and deliberation" is one of the primary indicators that an administrative action is intended to carry the force of law. *Id*. at 230.

*Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Barnhart v. Walton*, __ U.S.__, 122 S. Ct. 1265, 1269 (2002). Therefore, based on the Federal Circuit's decision in *Princess*, the Court holds that Carnival is liable for payment of the HMT on passengers who disembark the ship at layover ports covered by the HMT.

As a separate issue Carnival contends that *Princess* only upholds Customs' assessment of the HMT for layover stops from the time HQ 112511 was issued in 1993 and does not address the legality of Customs' retroactive application of that ruling. Carnival argues that prior to Customs' pronouncement in HQ 112511 that all passengers were, in the absence of contrary evidence, presumed to "disembark" at layover ports, cruise line operators were not required to maintain records of which passengers went ashore and which remained aboard ship and were unaware that they needed to record such information. *See* Pl.s' Mot. for Partial Summ. J. at 23. Carnival argues that HQ 112511 announced a change of procedure for which there was no "fair notice" given and cites a number of cases from the Federal Circuit and the United States Court of Appeals for the District of Columbia Circuit including *NEC Technologies v. United States*, 54 F.3d 736 (Fed. Cir. 1995), *General Electric Co. v.* EPA, 53 F.3d 1324 (D.C. Cir. 1995), *Creswell Trading Co. v. United States*, 15 F.3d 1054 (Fed. Cir. 1994), and *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987), for the proposition that an administrative agency cannot penalize a party for non-compliance with an administrative rule or impose a new evidentiary burden without first providing adequate notice. *See* Mem. of Points and Authorities in Support of Pl.s' Renewed Mot. for Partial Summ. J. at 11-15; Pl.s' Reply in Supp. of their Renewed Mot. for Summ. J. and Opp'n to Def.'s Cross-Mot. for Summ. J. at 26-30. Customs responds to Carnival's allegations stating:

Customs plainly has not applied any ruling or regulation "retroactively." Carnival's method of HMT payment and the audit leading to the payments sought in this action are critical. Pursuant to regulation, cruise lines are responsible for calculating HMT owed and making quarterly HMT payments. 19 C.F.R. § 24.24(e)(3)(ii). Prior to 1993, in making these payments, Carnival interpreted the HMT statute in its favor to exclude layover stops, though the statute applies to "any port use," including "loading [and] unloading" of passengers. 26 U.S.C. § 4461 & 4462(a)(1).

In 1993, Customs audited the cruise lines, and exercised its authority to collect underpayments discovered in the audit. *See* 19 U.S.C. § 1509(b); 19 C.F.R. § 24.24(h). Those underpayments include charges for layover stops. Thus, Customs' actions were not a reversal of any earlier official position, but merely its reasoned consideration of the issue presented.

Def.'s Reply to Pl.s' Reply Mem. in Supp. of Its Mot. for Summ. J. and in Opp'n to Def.'s Cross-Mot. for Summ. J. at 10-11.

The Court agrees that Carnival should not be held liable for HMT payments on cruises which made only layover stops at HMT covered ports prior to the issuance of HQ 112511. The Court concludes that general principles of tax law bear directly on this issue. In *International Business Machine Corp. v. United States*, 201 F.3d 1367, 1371-72 (Fed. Cir. 2000), the Federal Circuit determined that the HMT is an internal revenue tax. *See also Citgo Petroleum Corp. v. United States*, 25 CIT __, 104 F. Supp. 2d 106, 107-08 (2000). The Supreme Court has held that:

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen.

*Gould v. Gould*, 245 U.S. 151, 153 (1917) (citations omitted).[4] *See also Union Pacific Corp. v. The United States*, 5 F.3d 523, 525 (Fed. Cir. 1993) ("[T]he Supreme Court counsels to construe any reasonable doubts about the meaning of a tax statute in favor of the taxpayer."). Customs position on this matter, as stated above, is that the statute unambiguously imposes the HMT on "any port use" involving "'loading [and] unloading' of passengers." This notion is contrary to the Federal Circuit's findings in *Princess* that: (1) "the language of the statute is not clear and unambiguous about whether the HMT is to be imposed on stopovers and layovers at HMT-covered ports;" (2) "[the] legislative history provides some indication that Congress intended for the HMT to apply when a cruise ship made a stopover or layover in an HMT-covered port, [but] it is not sufficient evidence to indicate an 'unambiguous intent;'" and (3) "the regulation itself is ambiguous." 201 F.3d at 1359. Therefore, based on the precedent of the Supreme Court and the holdings of the Federal Circuit, the Court concludes that Carnival is not liable for the HMT assessed on layover stops prior to January 27, 1993, the date on which HQ 112511 was issued.

### III. Calculation of the "Value" of the Cruise Fare

The statute imposing the HMT provides that "[t]he amount of the tax imposed . . . on any port use shall be an amount equal to 0.125 percent of the value of the commercial cargo involved." 26 U.S.C. § 4461(b). Elsewhere, the HMT statute defines the term "value" in the context of the

---

[4] In *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996), the Supreme Court stated that "[w]here . . . a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute means." *Id.* at 744 n.3. Although *Gould* and *Smiley* appear to conflict, this Court follows *Gould* in the present action since it deals specifically with the resolution of ambiguity in a tax statute, which is the precise issue presented.

transportation of passengers as "the actual charge paid for such service or the prevailing charge for comparable service if no actual charge is paid." 26 U.S.C. § 4462(a)(5)(B). Customs' regulation, 19 C.F.R. § 24.24(e)(4)(i), essentially follows the language of the statute, stating that "[t]he fee is to be based upon the value of the actual charge for transportation paid by the passenger or on the prevailing charge for comparable service if no actual charge is paid." In HQ 112511 (Jan. 27, 1993) Customs addressed what it "consider[ed] 'transportation costs' for purposes of 19 C.F.R. 24.24(e)(4)" stating:

> In calculating the value of the "actual charge for transportation paid by the passenger" . . . it was Customs' position that this should include those expenditures which comprise the normal fare the cruise line would charge a passenger for a particular trip, including any travel agent's commission and those transportation and lodging costs included in the overall cruise package in bringing the passenger to and from the port of embarkation, provided the passenger actually availed himself of such transportation and lodging. ([HQ] 543896, dated May 13, 1987). . . .

> Upon further review of this matter, Customs remains of the opinion that the "transportation costs" for passengers of cruise vessels includes all "embarkation-to-disembarkation" costs as reflected on passenger tickets, including commissions paid to travel agents, port taxes, charges for pilotage, U.S. Customs and U.S. Immigration and Naturalization services, wharfage, and "suite amenities" provided they are contracted and paid for prior to the commencement of the voyage (*i.e.*, included in the cost of the ticket). However, after numerous discussions with representatives of the cruise industry, Customs is now of the opinion that the costs of land-based lodging and connecting air transportation are not to be included in Customs' calculation of the transportation costs under consideration regardless of whether a passenger avails himself of such transportation and lodging. Although this position represents a divergence from [HQ] 543896 cited above, Customs believes this revised position constitutes an equitable resolution of this matter. . . .

In HQ 112844 (Oct. 28, 1993) Customs reaffirmed its conclusions in HQ 112511 except with regard

to travel agents' commissions, on which it concluded that:

> [T]he inclusion of the entire amount of a travel agent's commission in the calculation of the aforementioned transportation costs without regard to whether any portion of such commission is attributable to the costs of land-based lodging and connecting air transportation is inconsistent with our position that the transportation costs include all "embarkation-to-disembarkation" costs. Accordingly, accurate apportionment of travel agents' commissions clearly distinguishing that portion of the commissions attributable to land-based lodging and connecting air transportation will result in the exclusion of any such costs from Customs' calculation of the "value of the actual charge for transportation paid by the passenger" for purposes of [19 C.F.R. §] 24.24(e)(4).

Carnival argues that Customs' interpretation is inconsistent with the statute, relevant caselaw, and the Internal Revenue Service's interpretations of similar taxes, and contends that charges for services, amenities, and "pass through" charges should be excluded from the fare amount on which the HMT is imposed. *See* Pl.s' Mot. for Partial Summ. J. at 27-37. Customs, on the other hand, argues that the Court must defer to its interpretation of the statute. *See* Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to Pl.s' Renewed Mot. for Partial Summ. J. at 4-8.

The Court concludes that when the disputed language is read in the context of the entire statute, the intent of Congress is clear.[5] One of the fundamental aspects of the HMT is that it is assessed based on "value" rather than tonnage or simply as an equal assessment on all vessels using a port. In the case of commercial cargo, a shipment of gold would be charged more HMT than a shipment of lead. Therefore, when 26 U.S.C. § 4462(a)(5)(B) defines "value" in the context of the transportation of passengers for hire as "the actual charge paid for such service" it follows that the

---

[5] "Where the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. 837, 842 (1984).

phrase "such service" refers to the shipboard service that the passenger is buying.  In the case of a cruise, the passenger is buying services and amenities as well as transportation.  Calculating the HMT on basic transportation costs alone would essentially render the tax a flat fee assessed per passenger.

It is also consistent with the statute to include the percentage of any travel agent commission that is attributable to making shipboard arrangements as part of the overall shipboard service. Nevertheless, it is inconsistent to include, as Customs has, port taxes and Customs and Immigration and Naturalization Service charges in the cruise "value."  While these are passed along to the passenger as part of the cruise fare, they are not part of the cruise service, but are additional charges imposed by the relevant government agencies.  Thus the Court concludes that the HMT for passenger cruise ships is properly calculated based on the costs included in the cruise fare, excluding costs for air transportation to the port of embarkation and land-based services, the percentage of travel agents' commissions attributable to the air transportation and land-based services, port taxes, and Customs and Immigration and Naturalization Service charges.  Accordingly, Carnival is entitled to a refund to the extent that it paid the HMT on amounts that should have been excluded from the cruise "value."

### IV.  Conclusion

For the forgoing reasons Carnival's motion for partial summary judgment is granted in part as to (1) the retroactive application of HQ 112511, regarding the assessment of the HMT for layover stops, (2) the inclusion of "port taxes" and charges for "U.S. Customs and U.S. Immigration and

Naturalization services," and (3) the inclusion of charges for airfare and certain land-based services and commissions prior to the issuance of HQ 112511 and HQ 112844.  Customs' motion for summary judgment is granted as to all other issues presently before the Court.  The parties shall confer with each other (i) in an effort to reach a stipulation on the amount of a final judgment in this matter and (ii) regarding such additional proceedings as may be necessary in this action, and shall submit a status report to the Court on the results of their conference within 60 days.


_____
                        R. KENTON MUSGRAVE, JUDGE



Dated:  July 31, 2002
            New York, New York