Slip Op. 02 - 99

# UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————————————————

PRINCESS CRUISES, INC.,

    Plaintiff,

     v.

THE UNITED STATES,

    Defendant.

————————————————————————————————

:
:
:
:
:
:
:
:
:
:
:
:

**Before: MUSGRAVE, JUDGE**

Consol. Court No. 94-06-00352
     (98-03-00463)

[On remand, the Court considered Plaintiff's arguments (1) that the Harbor Maintenance Tax ("HMT") should not be imposed on passenger cruises that begin and end at ports which are exempt from the HMT, but which make layover stops at ports covered by the HMT, (2) that the "value" on which the HMT is assessed should only be the actual cost of transportation, and (3) that Defendant was not entitled to recover any interest on underpaid HMT or Arriving Passenger Fee ("APF") amounts prior to the date on which it issued bills for the principal amounts. Defendant argued that the Court of Appeals for the Federal Circuit decided in *Princess Cruises, Inc. v. United States*, 201 F.3d 1352 (Fed. Cir. 2000), that layover stops alone give rise to HMT liability and that this Court is bound to follow that decision. Defendant also argued that the Court should defer to Customs' rulings on the proper calculation of the "value"of the cruise on which the HMT is assessed and that it had both a regulatory and common law basis for assessing interest from the time the HMT and APF payments originally became due. **Held:** (1) Based on the Federal Circuit's decision in *Princess*, Plaintiffs are liable for payment of the HMT on passengers who disembark the ship at layover ports covered by the HMT, but only after the issuance of HQ 112511 (Jan. 27, 1993), which resolved the ambiguity in the statute and regulation on this issue; (2) Customs' method of calculating the "value" of the cruise fare for HMT assessment purposes is correct except for the inclusion of "port taxes," charges for "U.S. Customs and U.S. Immigration and Naturalization services," and the inclusion of charges for airfare and certain land-based services and commissions prior to 1993, which are inconsistent with the HMT statute; and (3) Defendant is entitled to interest on the underpaid APF amounts from the time they were originally due. Therefore, Plaintiff's motion for partial summary judgment is granted in part, and Defendant's cross-motion for summary judgment is granted in part.]

Dated: August 29, 2002

*Gibson, Dunn & Crutcher LLP* (*Judith A. Lee* and *Brian J. Rohal*) for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Lara Levinson* and *Michael Duclos*), and *Scott Falk* and *Vickie R. Shaw*, Office of Chief Counsel, United States Customs Service, of counsel, for Defendant.

## OPINION

In this consolidated action, plaintiff Princess Cruises, Inc. ("Princess") contests the assessment and calculation of the Harbor Maintenance Tax ("HMT")[1] on passenger cruise ships by defendant the United States Customs Service ("Customs") and Customs' assessment of pre-billing interest on allegedly underpaid HMT and Arriving Passenger Fee ("APF")[2] amounts. This matter began in 1991, when Customs' Pacific Region, Regulatory Audit Division initiated audits of Princess's APF payments for 1986 to 1991 and its HMT payments for 1987 to1991. As a result of the audit, in January 1993 Customs notified Princess that it owed $405,383 for underpaid APF principal, $231,572 for APF interest, $259,560 for underpaid HMT, and $103,779 for HMT interest. Princess filed a timely protest of these assessments on March 23, 1993. On December 22, 1993 the protest was granted in part and denied in part by Customs Headquarters. In March 1994 Princess paid the amount it still owed for the audit period along with payments for 1992 and 1993.

In June 1994, Princess brought this action appealing the partial denial of its protest. Princess subsequently moved for summary judgment on the issues of (1) whether the APF should be assessed

---

[1] The HMT is a tax on port use calculated at a rate of 0.125 percent of the value of the commercial cargo. It was enacted pursuant to the Water Resources Development Act of 1986, Pub. L. No. 99-662, Title XIV, § 1402, 100 Stat. 4266 (1986), and is codified at 26 U.S.C. § 4461-62.

[2] The APF is a fee for "the provision of customs services in connection with . . . the arrival of each passenger aboard a commercial vessel or commercial aircraft from a place outside the United States . . . ." 19 U.S.C. § 58c(a)(5).

on cruises that originate or arrive directly from a port that is exempt from the APF, (2) whether the HMT should be assessed on cruises that begin and end at ports that are exempt from the tax, but make layover stops at ports subject to it, and (3) whether the "value" of the cruise on which the HMT is assessed should include anything more than the actual cost for transportation. This Court held that the APF applied only to cruises that originated or terminated at a port subject to the APF and that the HMT was unconstitutional as applied to passenger cruises in light of the Supreme Court's decision in *United States Shoe Corp. v. United States*, 523 U.S. 360 (1998), *aff'g* 114 F.3d 1564 (Fed. Cir. 1997), *aff'g* 19 CIT 1284, 907 F. Supp. 408 (1995) (holding the HMT unconstitutional as applied to exports). *See Princess Cruises, Inc. v. The United States*, 22 CIT 498, 15 F. Supp. 2d 801 (1998). Having found the HMT unconstitutional, the Court did not consider the other issues raised by Princess regarding the assessment and calculation of the HMT. The Court of Appeals for the Federal Circuit reversed this Court's holdings on both the APF and the HMT issues. *See Princess Cruises, Inc. v. United States*, 201 F.3d 1352 (Fed. Cir. 2000). The appellate court determined that Customs' APF regulation was entitled to deference, and that Customs' ruling interpreting the HMT statute and regulation was also entitled to deference. *See id.* at 1360, 1362. Both issues were "remand[ed] for a determination of Princess's . . . liability that is consistent with this decision." *Id.*

On August 25, 1995, while its first cause of action was pending before this Court, Princess received a letter from Customs stating that it still owed $237,192 in underpaid HMT and a bill for $108,772 in interest on this amount. Princess contends that no explanation was given as to the basis for these bills, and that it contacted several Customs officials in an attempt to discern why it was being billed when it thought it had paid in-full the amount due. On November 15, 1995 Princess

filed a protest with Customs challenging this assessment. While the protest was pending, Princess contacted a Customs auditor who was involved in the original audit. The auditor agreed that Princess should not still owe any principal HMT, but thought that the bill for interest might be for "pre-billing" interest, although he was not certain. In March 1997 Princess filed a supplement to its protest noting the auditor's belief that no additional HMT principal was due and arguing that no pre-billing interest should be assessed in this case.

On September 4, 1997 the Customs office at the Port of Los Angeles issued a partial denial of the protest in which it cancelled the bill for interest, concluding that it was duplicative of an earlier one, and agreed that Princess had already paid most of the $237,129 in HMT principal that was claimed in Customs' August 1995 letter. Nevertheless, Customs also informed Princess that, after further review of this matter, the Customs office in Indianapolis determined that Princess owed an additional $500,200. On October 8, 1997 Customs issued three bills to Princess totaling $687,139.66. On February 19, 1998 Princess paid these bills, with interest. Princess then brought a second action before this Court, which was consolidated with the earlier action on remand.

For the reasons that follow, the Court holds that Princess is not liable for the HMT on cruises which made only layover stops at HMT covered ports prior to the issuance of HQ 112511 (Jan. 27, 1993), which resolved the ambiguity in the statute and regulation on this issue. The Court also holds that Customs should not have included "port taxes" and charges for "U.S. Customs and U.S. Immigration and Naturalization services" in the cruise "value"on which the HMT was assessed, but was otherwise correct in assessing the HMT on the price paid for the cruise, exclusive of land-based services and commissions. Accordingly, the Court holds that Princess is not liable for pre-billing

interest on these HMT amounts. Nevertheless, the Court holds that Customs is entitled to pre-billing interest on the APF amounts.[3] Therefore, Princess's motion for summary judgment is granted in part and Customs' cross-motion for summary judgment is granted in part.

## I. Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 1581(a) the Court has jurisdiction over Princess's appeals from the partial denial of its protests, and pursuant to 28 U.S.C. § 1581(i) the Court has jurisdiction over Princess's claim for restitution of the amount of HMT that it allegedly overpaid. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## II. Assessment of Harbor Maintenance Taxes for Layover Stops

The HMT is "a tax on any port use," 26 U.S.C. § 4461(a), and "port use" is defined as "the loading of commercial cargo on, or . . . the unloading of commercial cargo from a commercial vessel at a port," 26 U.S.C. § 4462(a)(1). "The term 'commercial cargo' means any cargo transported on a commercial vessel, including passengers transported for compensation or hire." 26 U.S.C. § 4462(a)(3)(A). Ports in Alaska, Hawaii, and possessions of the United States are exempt from the tax. 26 U.S.C. § 4462(b). Although the statute itself does not explain how the HMT is to be

---

[3] Princess has abandoned the arguments against Customs' assessment of APF principal that the Federal Circuit remanded to this Court. *See Princess Cruises*, 201 F.3d at 1362.

assessed on passengers, 19 C.F.R. § 24.24(e)(4) states that "when a passenger boards or disembarks a commercial vessel at a port within the definition of this section, the operator of that vessel is liable for the payment of the port use fee." In HQ 112511 Customs addressed for the first time the issue of whether a passenger who "temporarily goes ashore and subsequently gets back on the vessel [at a layover stop] is considered to have 'disembarked' or 'boarded' at that port for purposes of 19 C.F.R. § 24.24(e)(4) so as to incur liability on behalf of the vessel operator for the payment of a port use fee." Customs concluded that cruise operators are liable for the HMT on passengers who leave the vessel at these interim stops and that there is a rebuttable presumption that every passenger does so.

Princess challenged Customs' ruling in its original motion for summary judgment in this action. On appeal, the Federal Circuit held that both 26 U.S.C. § 4461-62 and 19 C.F.R. § 24.24(e)(4) were ambiguous with regard to layover stops by cruise ships and gave *Chevron* deference[4] to Customs' interpretation of the regulation. *See Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1359 (Fed. Cir. 2000). Now, on remand, Princess incorporates by reference the arguments regarding the assessment and calculation of the HMT that were made before this Court by the plaintiffs in *Carnival Cruise Lines, Inc. v. The United States*, Consolidated Court No. 93-10-00691.

---

[4] Under the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), if a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "A court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id*. at 844.

In *Carnival Cruise Lines*, 26 CIT__, __ F. Supp. 2d __, 2002 WL 1768896, 2002 Ct. Intl. Trade LEXIS 78 (2002), the Court rejected Carnival's argument that the Supreme Court's decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001), *aff'g*, 185 F.3d 1304 (Fed. Cir. 1999), invalidated the reasoning behind the Federal Circuit's decision in *Princess Cruises*, but concluded that Carnival should not be held liable for HMT payments on cruises which made only layover stops at HMT covered ports prior to the issuance of HQ 112511. *Carnival Cruise Lines*, 26 CIT at __, __F. Supp. 2d at __, 2002 WL 1768896 at *3-4, 2002 Ct. Intl. Trade LEXIS at *11, 16. This holding was based on the Federal Circuit's finding that the HMT statute and regulation were both ambiguous, *see Princess Cruises,* 201 F.3d at 1359, that court's earlier determination in *International Business Machine Corp. v. United States*, 201 F.3d 1367, 1371-72 (Fed. Cir. 2000), that the HMT is an internal revenue tax, and the Supreme Court's holding in *Gould v. Gould*, 245 U.S. 151, 153 (1917), that "[i]n case of doubt [statutes levying taxes] are construed most strongly against the government and in favor of the citizen." *Carnival Cruise Lines*, 26 CIT at __, __F. Supp. 2d at __, 2002 WL 1768896 at *4, 2002 Ct. Intl. Trade LEXIS at *14-15. Nothing in the present case leads the Court to a different conclusion on this issue.[5] Thus, for the reasons more fully set forth in *Carnival Cruise Lines*, the Court holds that Princess is not liable for the HMT assessed on layover stops prior to January 27, 1993, when HQ 112511 was issued.

---

[5] Although Customs' asserts that "[t]he Federal Circuit held . . . that Customs properly collected HMT from Princess Cruises at layover stops," in actuality the Federal Circuit held that Customs' ruling was entitled to *Chevron* deference and remanded the matter for this Court to determine Princess's HMT liability consistent with that decision.

### III.  Calculation of the "Value" of the Cruise Fare

Princess also incorporates by reference the arguments made in *Carnival Cruise Lines* regarding the calculation of the "value" of the cruise fare use to determine the amount of HMT due. The statute imposing the HMT provides that "[t]he amount of the tax imposed . . . on any port use shall be an amount equal to 0.125 percent of the value of the commercial cargo involved." 26 U.S.C. § 4461(b).  Elsewhere, the HMT statute defines the term "value" in the context of the transportation of passengers as "the actual charge paid for such service or the prevailing charge for comparable service if no actual charge is paid."  26 U.S.C. § 4462(a)(5)(B).  Customs' regulation, 19 C.F.R. § 24.24(e)(4)(i), essentially follows the language of the statute, stating that "[t]he fee is to be based upon the value of the actual charge for transportation paid by the passenger or on the prevailing charge for comparable service if no actual charge is paid."  In HQ 112511 (Jan. 27, 1993) Customs addressed what it "consider[ed] 'transportation costs' for purposes of 19 C.F.R. 24.24(e)(4)" stating:

> In calculating the value of the "actual charge for transportation paid by the passenger" . . . it was Customs' position that this should include those expenditures which comprise the normal fare the cruise line would charge a passenger for a particular trip, including any travel agent's commission and those transportation and lodging costs included in the overall cruise package in bringing the passenger to and from the port of embarkation, provided the passenger actually availed himself of such transportation and lodging.  ([HQ] 543896, dated May 13, 1987). . . .

> Upon further review of this matter, Customs remains of the opinion that the "transportation costs" for passengers of cruise vessels includes all "embarkation-to-disembarkation" costs as reflected on passenger tickets, including commissions paid to travel agents, port taxes, charges for pilotage, U.S. Customs and U.S. Immigration and Naturalization services, wharfage, and "suite amenities" provided they are contracted and paid for prior to the commencement of the voyage (*i.e.*, included in the cost of the ticket).  However, after

> numerous discussions with representatives of the cruise industry, Customs is now of the opinion that the costs of land-based lodging and connecting air transportation are not to be included in Customs' calculation of the transportation costs under consideration regardless of whether a passenger avails himself of such transportation and lodging. Although this position represents a divergence from [HQ] 543896 cited above, Customs believes this revised position constitutes an equitable resolution of this matter. . . .

In HQ 112844 (Oct. 28, 1993) Customs reaffirmed its conclusions in HQ 112511 except with regard

to travel agents' commissions, on which it concluded that:

> [T]he inclusion of the entire amount of a travel agent's commission in the calculation of the aforementioned transportation costs without regard to whether any portion of such commission is attributable to the costs of land-based lodging and connecting air transportation is inconsistent with our position that the transportation costs include all "embarkation-to-disembarkation" costs. Accordingly, accurate apportionment of travel agents' commissions clearly distinguishing that portion of the commissions attributable to land-based lodging and connecting air transportation will result in the exclusion of any such costs from Customs' calculation of the "value of the actual charge for transportation paid by the passenger" for purposes of [19 C.F.R. §] 24.24(e)(4).

In *Carnival Cruise Lines*, Carnival argued that Customs' interpretation was inconsistent with

the statute, the relevant caselaw, and the Internal Revenue Service's interpretations of similar taxes,

and contended that charges for services, amenities, and "pass through" charges should be excluded

from the fare amount on which the HMT is imposed, and Customs countered that the Court was

required to defer to its interpretation of the statute. *Carnival Cruise Lines*, 26 CIT at __, __ F. Supp.

2d at __, 2002 WL 1768896 at *6, 2002 Ct. Intl. Trade LEXIS at *19-20. Nevertheless, the Court

concluded that the intent of Congress was clear when the disputed language was read in the context

of the entire statute,[6] and that one of the fundamental aspects of the HMT is that it is assessed based on "value" rather than tonnage or simply as an equal assessment on all vessels using a port. 26 CIT at __, __ F. Supp. 2d at __, 2002 WL 1768896 at *6, 2002 Ct. Intl. Trade LEXIS at *20. Therefore, the Court reasoned that when 26 U.S.C. § 4462(a)(5)(B) defines "value" in the context of the transportation of passengers for hire as "the actual charge paid for such service" the phrase "such service" refers to the shipboard service that the passenger is buying, which in the case of a cruise includes services and amenities as well as transportation. *Id*. Thus the Court rejected Carnival's argument that the HMT should be calculated based on basic transportation costs alone.

The Court also found that it was consistent with the statute to include the percentage of any travel agent commission attributable to making shipboard arrangements as part of the overall shipboard service. 26 CIT at __, __ F. Supp. 2d at __, 2002 WL 1768896 at *6, 2002 Ct. Intl. Trade LEXIS at *21. Nevertheless, the Court found that it was inconsistent to include, as Customs had, port taxes and Customs and Immigration and Naturalization Service charges in the cruise "value" since they are additional charges imposed by the relevant government agencies, not part of the cruise service. *Id*. Thus the Court concluded that the HMT for passenger cruise ships is properly calculated based on the costs included in the cruise fare, excluding costs for air transportation to the port of embarkation and land-based services, the percentage of travel agents' commissions attributable to the air transportation and land-based services, port taxes, and Customs and Immigration and Naturalization Service charges. *Id*.

---

[6] "Where the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. 837, 842 (1984).

Once again, nothing in the present case leads the Court to a different conclusion than the one reached in *Carnival Cruise Lines*. Therefore, Princess is entitled to a refund to the extent that it paid the HMT on amounts that should have been excluded from the cruise "value."

### IV.  Assessment of Interest on Underpaid Harbor Maintenance Taxes and Arriving Passenger Fees

The central issue arising from Princess's second protest, regarding the August 1995 letter and bills and the subsequent corrections, is Customs' assessment of what Princess terms "pre-billing" interest. Customs explains that the later bills result from the fact that Princess's earlier payments were allocated between principal and interest, and although Princess thought it had paid the principal in-full, it actually had not since some of the payment went to interest which had accrued since the time the principal should have been paid under Custom's interpretation of the HMT and APF statutes. *See* Oral Argument Tr. at 23-27 (Jan. 30, 2002). Customs contends that there has been no "double billing," as Princess alleges, in terms of the aggregate amount of principal and interest demanded. *See id.* at 27. Customs asserts a regulatory and common law basis for these interest assessments. *See id.* at 19. First, it relies on 19 C.F.R. § 113.64(e), which provides for the exoneration of "the United States and its officers from any risk, loss or expense arising out of entry or clearance of the carrier, or handling of the articles on board" through an international carrier bond. *See* Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. at 8-11. Alternatively, Customs relies a line of cases originating with *United States v. Billings*, 232 U.S. 261 (1914), for the principal that it is entitlement to interest on equitable grounds to prevent

unjust enrichment. *See* Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. at 13-16.

Concerning the international carrier bond, Princess argues that 19 C.F.R. § 113.64(e) "does not *create* any independent liability on the part of the carrier" Pl.'s Mot. For Summ. J. at 16 n.8 (emphasis in the original). Moreover, Princess argues the statute of limitations for collecting liquidated damages under the bond has expired and that in any event Customs cannot recover more than the face amount of $50,000.00 on the International Carrier Bond. *See id.* at 16-18. Princess also argues that Customs has no equitable right to "pre-billing" interest in light of the fact that it delayed roughly 18 months between March 1994, when it received Princess's payment for the original bills, and August 1995, when it issued bills for the remaining amounts due, and was unable to explain the basis for the later bills until its reply brief in the present litigation. *See* Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. and Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 13-19. Princess maintains that the equities lie in its favor given the efforts it has had to put forth to obtain an explanation for the bills it received. *Id*. at 19.

As a preliminary matter, since the Court holds that Princess is not liable for the HMT assessed on cruises which made only layover stops at ports subject to the HMT prior to January 27, 1993 it follows that Princess is not liable for interest on these principal amounts. Turning to the issue of the interest assessed on the APF principal, the Court agrees with Princess that 19 C.F.R. § 113.64(e) does not create an independent right to collect interest, but rather provides a means of recovery once the right to recovery is established. Nevertheless, while Customs' inability to provide Princess with an explanation for the actual basis for some of its bills until late in this litigation is

appalling, the Court holds that the relevant equitable inquiry focuses on when Customs was entitled to the principal APF amounts at issue. The Federal Circuit concluded that Customs' interpretation of the APF statute was reasonable, notwithstanding the remanded arguments that Princess has abandoned. *See Princess Cruises*, 201 F.3d at 1362. Thus, Customs is correct in stating that it "lost" the interest it could have earned had it received these APF payments in the ordinary course of business during the period covered by the audit. *See* Def.'s Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. at 14. Therefore, the Court holds that Customs has an equitable right to recover pre-billing interest from Princess on the APF principal.

## *VI. Conclusion*

For the forgoing reasons Princess's motion for summary judgment is granted in part as to (1) the retroactive application of HQ 112511, regarding the assessment of the HMT for layover stops, (2) the inclusion of "port taxes" and charges for "U.S. Customs and U.S. Immigration and Naturalization services," (3) the inclusion of charges for airfare and certain land-based services and commissions prior to the issuance of HQ 112511 and HQ 112844, and (4) the assessment of "pre-billing" interest on the HMT principal assessed by Customs. Customs' cross-motion for summary judgment is granted as to all other issues presently before the Court. The parties shall confer with each other (i) in an effort to reach a stipulation on the amount of a final judgment in this matter and (ii) regarding such additional proceedings as may be necessary in this action, and shall submit a status report to the Court on the results of their conference within 60 days.

 

 

_____
R. KENTON MUSGRAVE, JUDGE


Dated: August 29, 2002
      New York, New York