**PRINCESS CRUISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Ops. 98–74, 98–113.**
**Court No. 94–06–00352.**

United States Court of
International Trade.

June 9, 1998.

Amended Order Aug. 5, 1998.

Gibson, Dunn & Crutcher LLP (Judith A. Lee) for Plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, A. David Lafer and John K. Lapiana, Washington, DC, for Defendant.

## OPINION

MUSGRAVE, Senior District Judge.

[Plaintiff challenges Customs' imposition of arriving passenger fees ("APF") and Harbor Maintenance Tax ("HMT") fees on cruise ship passengers. Held: Passenger cruises that begin and end in APF-exempted ports do not trigger APF liability where layover stops are made at APF-covered ports. The HMT may not be imposed on the value of transportation services provided to cruise passengers.]

In *U.S. Shoe Corp. v. United States*, 907 F.Supp. 408, 19 CIT 1284 (1995) ("*U.S. Shoe*"), this Court held that the Harbor Maintenance Tax ("HMT") was unconstitutional as applied to exports. The decision was affirmed by the Court of Appeals for the Federal Circuit ("CAFC"), *U.S. Shoe Corp. v.*

*United States,* 15 Fed. Cir. (T) ——, 114 F.3d 1564 (1997), and, finally, by the United States Supreme Court, *United States v. U.S. Shoe Corp.,* —— U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). Not explored, however, was the question of whether the constitutionally flawed statute applied to charges imposed upon shippers for the transportation of passengers.

Plaintiff, Princess Cruises, Inc.("Princess"), brought this action to contest the assessment and collection of arriving passenger fees ("APFs") and Harbor Maintenance Tax fees ("HMT fees") on passenger cruises by defendant, the United States Customs Service ("Customs"). Princess contends that cruises that originate or arrive directly from an APF-exempt port should not be assessed APFs. Princess also challenges the assessment of HMT fees on cruises originating and terminating in HMT-exempt ports, even when the cruise makes layover stops at HMT-covered ports. Finally, Princess contests the calculated value of the cruise upon which the HMT fees were based. The Court finds that the APF does not attach to passengers whose cruise originates and terminates in an APF-exempted port. Further, the Court finds that the HMT may not be imposed on the value of transportation services provided to cruise passengers.

### *Background*

Princess is a wholly-owned indirect subsidiary of the Peninsular and Oriental Steam Navigation Company. Princess operates cruise ships around the world. At issue in this case are two Princess voyages known as the "Transcanal" and "Vancouver/Whittier" cruises. The Transcanal cruise journeys between Puerto Rico and Acapulco, traveling through the Panama Canal, and visits a number of ports in the Caribbean and South America. The Vancouver/Whittier cruise also travels between two ports, Vancouver, British Columbia and Whittier, Alaska and also stops at various ports en route. On both cruise routes, passengers board the cruise in either of the ports of origination and are assigned state rooms where they maintain a temporary residence until the termination port where passengers disembark. At the layover ports, some passengers temporarily go ashore for sightseeing or shopping while other passengers choose to remain aboard the ship.

Since the imposition of the HMT in 1987, Customs has been assessing and collecting the fees for all passengers aboard cruises that originate, layover and terminate in HMT-covered ports. In March 1991, Customs' Regulatory Audit Division ("RAD") began an audit of Princess' collection and remittance of APFs and shortly thereafter, began an audit of Princess' collection and remittance of HMT fees. Customs' APF audit examined the time period from July, 1986 through December, 1991 and the HMT audit examined the time period from 1987 through 1991. The APF audit was concluded in July, 1992 and the HMT audit was completed in May, 1992. As a result of the audits, Customs issued two bills to Princess for alleged underpayment of APFs and HMT fees. On March 23, 1993, Princess filed a protest challenging the assessment of both the APFs and the HMT fees and the associated interest charges. Princess also contends that Customs assessed the HMT based on an overvalued transportation charge. Customs denied Princess' protest in part on December 22, 1993 and Princess filed a summons and complaint with the Court under 28 U.S.C. § 1581(a).

### *Standard of Review*

Under 28 U.S.C. § 2639(a)(1), Customs' decision is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such decision."[1] However, the CAFC has found that the presumption of correctness applies solely to factual questions and that this Court's duty is to find the correct result. The duty of the Court to find the correct result stems from both legislative and judicial sources. The CAFC recently found that "the trial court ... must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative.... [T]he court's duty is to find the

---

1. 28 U.S.C. § 2639(a)(1) (1994).

correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). The issues before the Court are the interpretation of the APF and HMT statutes which are questions of law and are reviewed *de novo.*

Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." CIT R. 56. The Court finds that there is no genuine issue as to any material fact and therefore the Court has the power to render summary judgment.

### Discussion

This case concerns two issues involved with the operation of cruise lines by Princess. The first issue concerns the application of APFs to two cruise routes operated by Princess. APFs attach to passengers that enter the U.S. from foreign ports. A number of foreign ports are exempted from APF liability and the controversy in this case focuses on the interpretation of the APF statute, specifically the meaning of "journey" and "arrival ... from." The task for the Court is to demarcate the scope of APF coverage of cruise passengers' arrival from certain ports.

Princess also contests the application of HMT fees to cruises that originate and terminate at HMT-exempted ports but make layovers at HMT-covered ports. At the center of this issue is the definition of "port use" as described in the statute. The statute defines port use as the "loading or unloading" of cargo. The question for the Court is whether cruise passengers are subject to the HMT when they are "loaded" onto a cruise ship.

### I. Application of APFs

The arriving passenger fee was a part of the Consolidated Omnibus Budget Reconciliation Act of 1986. The APF was codified at 19 U.S.C. § 58c as follows:

§ 58c. Fees for certain customs services

(a) Schedule of fees

(5) For the arrival of each passenger aboard a commercial vessel or commer-cial aircraft from a place outside of the United States (other than a place referred to in subsection (b)(1)(A) of this section), $5.

19 U.S.C. § 58c(a)(5) (1988). Subsection (b)(1)(A) lists those ports that are exempted from APF liability.

§ 58c(b) Limitation on fees

(1) No fee may be charged under subsection (a) of this section for customs services provided in connection with -

(A) the arrival of any passenger whose journey—

(i) originated in—

(I) Canada,

(II) Mexico,

(III) a territory or possession of the United States, or

(IV) any adjacent island (within the meaning of section 1101(b)(5) of title 8), or

(ii) originated in the United States and was limited to—

(I) Canada,

(II) Mexico,

(III) territories and possessions of the United States, and

(IV) such adjacent islands; ...

19 U.S.C. § 58c (b)(1)(A) (1988). Princess contends that the statute directs Customs not to collect the APF when: (1) "passengers whose last stop prior to arrival into the United States was a place listed in subsection (b)(1)(A) ...;" or when (2) "passengers whose cruise 'originated in' one of these places listed in subsection (b)(1)(A), ..." Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 15. Customs disputes Princess' reading of the statute and argues that the statute directs them to consider "all stages of an itinerary" which would include the port of embarkation, all layover stops and the port of disembarkation. Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Cross–Mot. For Summ. J. ("Def.'s Mot.") at 27.

■ The Court finds that the term "journey" as found in the APF statute refers to the travel from origination to termination of the cruise. Therefore, any cruise that origi-

nates in an APF-covered port and terminates in the United States will be subject to the assessment of the APF. Likewise, any cruise that originates in an APF-exempt port, such as Acapulco or Puerto Rico, and terminates in the United States or an APF-exempt port does not trigger the APF. Further, the Court finds that layover stops do not affect the administration of the APF statute; simply stopping at an APF-exempt port as the last port of call does not exempt cruise passengers from APF liability. Similarly, layover stops at APF-covered ports do not, in and of themselves, trigger APF liability. A cruise is a single journey, and origination and termination ports are to be the only sites which occasion the imposition of APF liability.

Under this rubric, Princess' Transcanal cruise is exempt from APFs since the origination and termination ports of Acapulco and Puerto Rico are specifically designated as exempt ports in subsection (b)(1)(A). Similarly, Princess' Vancouver/Whittier cruise is exempt from APF liability because both origination and termination ports are APF-exempt ports under the statute. In Princess' Transcanal and Vancouver/Whittier cruises, passengers either begin their journey in the United States or a specified exempt port. Although Customs argues that the entire itinerary must be considered, the Court finds that passengers board a cruise for the duration of the journey and when that journey begins and ends in an exempt port, APF attaches.

## II. Application of HMT Fees

▇ Both parties have developed rationales on the application of HMT fees and the corresponding value of transportation services entailed. The Court finds that the HMT fees are unconstitutional with respect to transportation services provided to cruise passengers just as the tax on exported cargo was found to be in *U.S. Shoe.* Consequently, the Court does not reach the issues of HMT applicability on exempt and non-exempt ports nor the computation of the value of transportation services.

In 1987, the HMT took effect with the avowed purpose of helping to finance the general maintenance of U.S. ports and specifically the dredging of U.S. ports. S.Rep. No. 99–126, at 9 (1986), *reprinted* in 1986 U.S.C.C.A.N. 6639, 6646–47. The HMT was codified at 26 U.S.C. § 4461 and states: "General Rule ... There is hereby imposed a tax on any port use." 26 U.S.C. § 4461(a) (1988). The statute defines "port use" as "(A) the loading of commercial cargo on, or (B) the unloading of commercial cargo from, a commercial vessel at port." 26 U.S.C. § 4462(a)(1) (1988). The term "commercial cargo" is defined as "any cargo transported on a commercial vessel, *including passengers* transported for compensation or hire." 26 U.S.C. § 4462(a)(3)(A) (1988) (emphasis added). In addition, Customs' regulations base the tax assessed on passengers "upon the value of the actual charge for transportation paid by the passenger or on the prevailing charge for comparable service if no actual charge is paid." 19 C.F.R. § 24.24(4)(i) ("transportation services").

Resolution of this issue turns on the holding in *U.S. Shoe,* where the Supreme Court confirmed that levying a tax on the value of commercial cargo loaded for export violated the Export Clause of the Constitution, U.S. Const., Art I, § 9, cl. 5. —— U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453. The statute has equated passengers with cargo, and *U.S. Shoe* has held that taxing exports, or "loading," of cargo violates the Constitution. *Id.* Therefore, the "loading" of passengers must also violate the Constitution, even though passengers cannot be said to be "exported." The Court finds the solution in the common meaning of the term embark which is, together with Customs' regulations and findings, synonymous with the term loading. Webster's defines "embark" to mean "to go on board a vessel or a boat for a voyage; as, the troops *embarked* for Lisbon." Webster's New International Dictionary 2nd Edition, at 835 (1956) (emphasis in original).

Under 19 C.F.R. § 4.80a, Customs defines "embark" to mean

a passenger boarding a vessel for the duration of a specific voyage and *disembark* means a passenger leaving a vessel at the conclusion of a specific voyage. The terms *embark* and *disembark* are not applicable to a passenger going ashore temporarily at

a coastwise port who reboards the vessel and departs with it on sailing from the port.

19 C.F.R. § 4.80a(a)(4) (1989) (emphasis in original). Although Customs' definition appears in an unrelated section of its regulations, the Court finds that this definition comports with the common meaning of the terms embark and disembark as well as load and unload with respect to passengers. The Court finds that embark, board and load all refer to the initial activity of passenger movement from port onto the vessel. In congruence with the statute equating cargo to passengers and the ruling in *U.S. Shoe* voiding the HMT on the loading of cargo, the Court finds that the HMT with respect to passengers also runs afoul of the Export Clause of the Constitution.

### *Conclusion*

For the foregoing reasons, the Court finds that cruise passengers whose journey originates and terminates at APF-exempt ports are exempt from APFs. The Court also finds that cruise passengers are not subject to HMT liability.

### JUDGEMENT

Upon consideration of plaintiffs' motion for summary judgment, defendant's opposition and cross-motion for summary judgment, oral argument and all other papers and proceedings, it is hereby

**ORDERED** that the plaintiffs' motion is granted in part and defendant's cross-motion is denied; and it is further

**ORDERED** that the arriving passenger fee provided in 19 U.S.C. § 58c is not due for passengers on cruises that begin and end at a port that is not a designated APF port, even if the cruise makes an interim layover stop at a designated APF port; and it is further

**ORDERED** that the Harbor Maintenance Tax provided in 26 U.S.C. § 4461 is unconstitutional as to taxes charged based upon the embarkation of cruise passengers in accordance with the statute, which equates passengers with cargo, and in accordance with

*U.S. Shoe,* cited and discussed *supra*; and it is further

**ORDERED** that defendant shall refund all harbor maintenance tax fees covered under this opinion, with interest.

### AMENDED ORDER

Upon consideration of plaintiff's Motion to Amend Judgment and For a Rehearing, defendant's response thereto, and all other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's Motion to Amend Judgment is hereby granted, and, in light of defendant's lack of opposition to the Motion to Amend Judgment, plaintiff's Motion For a Rehearing is denied; and it is further

**ORDERED** that the Court's judgment in *Princess Cruises, Inc. v. United States,* Slip Op. 98–74 (June 9, 1998), is amended pursuant to USCIT R. 59 and this Order; and it is further

**ORDERED** that the arriving passenger fee provided in 19 U.S.C. § 58c is not due for passengers on cruises that: (1) begin in any place or port listed in 19 U.S.C. § 58c(b)(1)(A), (2) begin in any place or port listed in 19 U.S.C. § 58c(b)(1)(A) and end directly in the United States, or (3) begin in the United States and that arrive temporarily or end in ports of call in any place or port listed in 19 U.S.C. § 58c(b)(1)(A); and it is further

**ORDERED** that the Harbor Maintenance Tax provided in 26 U.S.C. § 4461 is unconstitutional as to taxes charged and based upon the embarkation of cruise passengers, in accordance with the statute which equates passengers with cargo, and in accordance with *U.S. v. U.S. Shoe Corp.,* —— U.S. ——, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998); and it is further

**ORDERED** that defendant shall refund all arriving passenger fees and harbor maintenance taxes covered under this opinion, with interest.