# United States Court of Appeals for the Federal Circuit

03-1330,-1345

PRINCESS CRUISES, INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

Judith A. Lee, Gibson, Dunn & Crutcher LLP, of Washington, DC, argued for plaintiff-cross appellant. Of counsel on the brief was Michael K. Stransky.

Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Robert D. McCallum, Jr., Associate Attorney General; and David M. Cohen, Director. Of counsel on the brief was Richard McManus, Attorney, Office of the Chief Counsel, Bureau of Customs and Border Protection, of Washington, DC.

Appealed from: United States Court of International Trade

Judge R. Kenton Musgrave

# United States Court of Appeals for the Federal Circuit

03-1330, -1345

PRINCESS CRUISES, INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:    February 8, 2005

_____

Before MICHEL[*], Chief Judge, NEWMAN, and BRYSON, Circuit Judges.

MICHEL, Chief Judge.

Princess Cruises, Inc. ("Princess") appeals from the final judgment of the Court of International Trade ("trial court").  The appeal was submitted for our decision after oral argument on October 4, 2004.  We affirm the trial court's determination that liability for Harbor Maintenance Tax ("HMT") payments on cruises occurring prior to January 27, 1993, which used HMT-covered ports only for layover stops ("layover-only HMT liability"), is barred by the retroactivity doctrine.  We also affirm the trial court's award of prejudgment interest to the government because the government was entitled to receive Arriving Passenger Fee ("APF") payments from Princess prior to the issuance of a bill from Customs.

_____

[*]    Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

## I.  Background

Princess owns and operates commercial cruise lines that use the ports of the United States.  The Harbor Maintenance Revenue Act of 1986 ("HMRA"), as codified at 26 U.S.C. §§ 4461 et seq., made cruise lines liable for payments based on port use.  The HMRA payments at issue in this case are HMT and APF payments.  In 1991, Customs initiated an audit of Princess's HMT and APF payments.  As a result of the audit, Customs determined that Princess was required to make further HMT and APF payments.  During the process, Customs issued Headquarters Ruling 112511, 1993 U.S. CUSTOM HQ LEXIS 12 (Jan. 27, 1993) (the "January 1993 HQ ruling").  At issue in this case is Customs' determination under the January 1993 HQ ruling that Princess is subject to layover-only HMT liability and the related evidentiary presumption that all passengers on board the cruise are deemed to have disembarked and/or boarded at the layover port.  Princess challenges the January 1993 HQ ruling, as well as Headquarters Ruling 112750, 1993 U.S. CUSTOM HQ LEXIS 2492 (Oct. 28, 1993) (the "October 1993 HQ ruling"), which provided further reasoning in support of the evidentiary presumption.

Princess brought an action in the trial court challenging Customs' assessment of Princess's HMT and APF liability.  The court initially entered judgment in favor of Princess based on the Supreme Court's decision in United States v. United States Shoe Corp., 523 U.S. 360 (1998), declaring the provisions of the HMRA related to exported goods unconstitutional under the Exports Clause.  The trial court concluded that the provisions of the HMRA governing the transportation of passengers were likewise unconstitutional under the Exports Clause.  See Princess Cruises, Inc. v. United States,

15 F. Supp. 2d 801 (Ct. Int'l Trade 1998). This court reversed, determining that the provisions related to passengers were not themselves unconstitutional under the Exports Clause and that such provisions were severable from the provisions declared unconstitutional by the Supreme Court. Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1358 (Fed. Cir. 2000). On remand, the trial court held that layover-only HMT liability cannot be assessed against Princess for cruises occurring prior to January 27, 1993 (the date of the January 1993 HQ ruling). Princess Cruises, Inc. v. United States ("Summary judgment opinion"), 217 F. Supp. 2d 1361, 1364-65 (Ct. Int'l Trade 2002). The trial court further addressed Princess's APF liability, holding that the government was entitled to prejudgment interest from the time that Princess should have made the APF payments in the ordinary course of business, not merely for the period after billing. Id. at 1367-68.

The government appeals the trial court's determination related to pre-1993 layover-only HMT liability and Princess cross-appeals the trial court's determination related to prejudgment interest. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

We note that this appeal is closely related to Carnival Cruise Lines, Inc. v. United States, Nos. 04-1110, 04-1219, also before this panel. These appeals share the common issue of whether layover-only HMT liability can be assessed against the cruise lines for pre-1993 cruises. As in this case, the trial court in Carnival Cruise Lines held that Carnival was not liable for layover-only HMT payments prior to the issuance of the January 1993 HQ ruling. Carnival Cruise Lines, Inc. v. United States, 246 F. Supp. 2d 1296 (Ct. Int'l Trade 2002). Indeed, the trial court based its decision in this case on its

reasoning in <u>Carnival Cruise Lines</u>.  Accordingly, in addressing the reasoning of the trial court, we refer to its decisions in both this case and <u>Carnival Cruise Lines</u>.

## II.  Violation of Fed. R. App. P. 28(c)

Before turning to the merits of this case, we address a procedural matter.  Under Fed. R. App. P. 28, the appellant is allowed an opening brief, the appellee is allowed a brief in response, and the appellant is allowed a reply brief.  "An appellee who has cross-appealed may file a brief in reply to the appellant's response to the issues presented by the cross-appeal."  Fed. R. App. P. at 28(c).  The practice notes to Rule 28 in the Federal Circuit's Rules of Practice further state that "counsel are cautioned, in cases involving a proper cross-appeal, to limit the fourth brief to the issues presented by the cross-appeal."

In this case, the reply brief Princess filed as cross-appellant was not limited to issues concerning the cross-appeal.  Indeed, the majority of Princess's reply brief addressed the government's appeal.  After we raised Princess's failure to comply with Rule 28(c) during oral argument, Princess filed an unopposed motion to strike the offending portions of its reply brief, which we granted.  We appreciate Princess's efforts to correct the problem it created, albeit belatedly.

We note a troubling trend for the counsel of cross-appellants to disregard the rule limiting their reply brief to issues concerning the cross-appeal.  <u>See, e.g.</u>, <u>In re Violation of Rule 28(c)</u>, 388 F.3d 1383 (Fed. Cir. 2004).[1]  The filing of improper sur-reply arguments is unfair to appellants who bear the burden of demonstrating prejudicial error

_____

[1]  We note that counsel in this case did not have the benefit of our order in <u>In re Violation of Rule 28(c)</u>, which issued on November 5, 2004, well after the briefs in this case were filed.

in the decision being appealed and, therefore, are entitled to the last word in both the briefs and at oral argument on their appeal.

We caution all counsel for cross-appellants who file improper sur-reply arguments that they may be subject to sanctions under Fed. R. App. P. 46(c), which provides that "[a] court of appeals may discipline an attorney who practices before it . . . for failure to comply with any court rule." We further urge counsel for appellants to file timely motions to strike improper sur-reply arguments because the prejudice from improper sur-reply arguments is difficult to eliminate once such arguments have been read by the court.

### III. Government's Appeal

The government appeals the trial court's conclusion that the January 1993 HQ ruling cannot be applied to conduct occurring prior to the ruling's issuance. Summary judgment opinion, 217 F. Supp. 2d at 1364-65; Carnival Cruise Lines, 246 F. Supp. 2d at 1301. The trial court's decision was based on the canon of construction pronounced in Gould v. Gould, 245 U.S. 151, 153 (1917), that ambiguities in tax statutes "are construed most strongly against the government and in favor of the citizen." Princess advances here an alternative argument from that adopted by the trial court, contending that application of the January 1993 HQ ruling to conduct preceding the ruling is barred under the retroactivity doctrine. The government argues that neither the trial court's rationale nor the alternative ground advanced by Princess justifies the result adopted by the trial court. As explained below, we agree with Princess that the retroactivity doctrine bars application of the January 1993 HQ ruling to pre-1993 conduct.

**A.**

"Retroactivity is not favored in the law" and, therefore, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). In other words, a rule or regulation will not be applied retroactively unless the agency clearly intended that the rule have retroactive effect and Congress authorized retroactive rulemaking. See id.

The most cited definition of retroactivity is that given by Justice Story in Society for Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (No. 13,156) (C.C.N.H. 1814), that "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." The Supreme Court elaborated on this definition in Landgraf v. USI Film Products, stating:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have sound instincts and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

511 U.S. 244, 269-70 (1994) (internal citations, quotations, and footnote omitted).

Thus, the court must consider not only in a bright-line fashion whether a rule, regulation,

or decision "creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past," but must also consider more comprehensively the "nature and extent of the change of the law," "the degree of connection between the operation of the new rule and a relevant past event," and "familiar considerations of fair notice, reasonable reliance, and settled expectations." Id. at 270; see also Marrie v. SEC, 374 F.3d 1196, 1206-09 (D.C. Cir. 2004) (applying the Landgraf factors); McCoy v. Gilbert, 270 F.3d 503, 509 (7th Cir. 2001) (same).

The government focuses its retroactivity arguments on a test it discerns from the Seventh Circuit, in which the court discussed "whether a rule is a clarification or a change in the law." Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993) (emphasis added), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999). Under this doctrine, changes, but not clarifications, have retroactive effect. The Pope court reasoned that "[a] rule simply clarifying an unsettled or confusing area of the law . . . does not change the law, but restates what the law according to the agency is and has always been." 998 F.2d at 483. Further, under Pope, courts in the Seventh Circuit "will defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." Id.

We find the binary analysis -- change or clarification -- advanced by the government largely unhelpful. Merely categorizing rules or applications of rules as "clarifications" or "changes" provides little insight into whether a retroactive effect would result in a particular case. As noted by the Court of Appeals for the D.C. Circuit, a clarification, in fact, "changes the legal landscape," because "a precise interpretation is

not the same as a range of possible interpretations." <u>Health Ins. Ass'n of Am., Inc. v.</u> <u>Shalala</u>, 23 F.3d 412, 423-24 (D.C. Cir. 1994); <u>McCoy</u>, 270 F.3d at 509 (noting that the <u>Landgraf</u> factors must be applied because "almost every new statute results in some perceptible effect or impact on countless past or pre-existing choices, decisions, and interests of the actors and subjects in the newly-regulated field").

Further, the bright-line, binary test espoused by the government conflicts with the court's obligation to weigh the various factors described in <u>Landgraf</u>. Indeed, <u>Landgraf</u> explicitly requires the court to consider "the <u>nature and extent</u> of the change in the law," not merely whether a change has occurred. 511 U.S. at 270 (emphasis added).

Finally, the government's argument based on bright-line categories mischaracterizes the Seventh Circuit's doctrine, which appears to rely substantially on the agency's intent in enacting a rule or regulation, not merely whether the effect of the rule is a change or a clarification. Thus, we reject the government's argument and instead apply the factors outlined in <u>Landgraf</u>.

**B.**

Two related decisions in the January and October 1993 HQ rulings raise retroactivity concerns. The first is Customs' conclusion that cruise lines are subject to layover-only HMT liability. January 1993 HQ ruling, 1993 U.S. CUSTOM HQ LEXIS 12, at *4-*13. The second is an evidentiary presumption that all passengers disembarked and/or boarded the cruise ship at each layover stop. The January 1993 HQ ruling reads, "Customs is entitled to the presumption, rebuttable upon submission of adequate documentation, that every passenger travelling on the vessel 'disembarks' and/or

'boards' at these stopover ports within the meaning of 24.24(e)(4) and that HMFs [HMTs] should be assessed accordingly." Id. at *11-*12.

To determine whether these decisions would have retroactive effect if applied to conduct occurring prior to January 27, 1993, we examine the Landgraf factors, namely, the "nature and extent of the change of the law," "the degree of connection between the operation of the new rule and a relevant past event," and "familiar considerations of fair notice, reasonable reliance, and settled expectations." 511 U.S. at 270.

**1.**

Princess contends that prior to the January 1993 HQ ruling "the contemporaneous state of the law held that such layover stops were not subject to HMT assessment." In other words, Princess argues that the "nature and extent of the change of the law" was significant; indeed, total -- from no liability to 100% liability per passenger.

Princess's contention conflicts generally with our prior decision in this case, where we held that the relevant statute, congressional intent, and regulation were sufficiently ambiguous to require deference to, and adoption of, Customs' 1993 interpretation of its ambiguous regulation. Princess Cruises, 201 F.3d at 1358-60. In the prior decision, we found ambiguous the congressional intent, although we noted that the legislative history related to the HMT and subsequent taxes "implies that . . . Congress believed that the HMT applied to stopovers." Id. at 1359. We also found ambiguous an interpretive regulation providing that liability accrued "'when a passenger boards or disembarks a commercial vessel at a port within the definition of this section.'" Id. at 1358 (quoting 19 C.F.R. § 24.24(e)(4) (1999)). We thus concluded that we were

"forced to rely on Customs's interpretation of its own regulations." Id. at 1359. Our prior decision in this case thus demonstrates that the state of the law prior to the January and October 1993 HQ rulings was not settled in favor of Princess. Accordingly, because Customs was required merely to decide an unsettled question between two competing viewpoints, that decision, by itself, would be unlikely to effect a significant change in the law. Princess also relies on two specific pieces of evidence in support of its position -- a March 23, 1991, letter from a Customs Regional Director and a cruise vessel summary sheet ("CVSS"). We find neither persuasive.

Princess mistakenly relies on the March 23, 1991, letter it received from Donald Frigge, a Customs Regional Director. In this letter, Frigge stated that "we have received word from the Office of Regulations and Rulings that C.R. 4.80a(4) [sic] applies to your Alaska voyages and no HMF [HMT] is due for stopovers (layovers)." In this appeal, Princess contends that this letter "was a valid ruling under the Customs Service's own regulations existing at the time," citing the definition of "ruling letter" in 19 C.F.R. § 177.1(d). We rejected this contention, however, in our prior decision in this case, where we held that the letter "was not a formal 'letter ruling' or adjudication by Customs." Princess Cruises, 201 F.3d at 1360. Indeed, we find troubling Princess's failure to cite our prior decision in its argument on this point.

Second, Princess cites the CVSS, which Princess, along with other cruise lines, was required to complete and send to Customs on a quarterly basis. Two categories of requested information are of particular relevance, namely, "Number of Passengers on Cruise" and "Total Eligible Charges for Passengers on Cruise." Under the January 1993 HQ ruling, a cruise line's layover-only HMT liability is limited to those passengers

who actually disembark and/or board the cruise ship at the layover port ("eligible passengers"). Princess contends that the existence of a blank for the total number of passengers on the cruise and the absence of a blank for the number of eligible passengers necessarily means that the HMT would not be charged for mere layovers. Princess also points out that the regulations accompanying the CVSS did not provide any direction on how to calculate the layover-only HMT liability. Although a blank space labeled "Total Number of Eligible Passengers" may have been clearer, we disagree that layover-only HMT liability is inconsistent with the CVSS. Instead, a cruise that made only a layover stop at an HMT-covered port could have listed the total eligible charges based on the number of eligible passengers in the "Total Eligible Charges for Passengers on Cruise" category. Thus, we disagree with Princess that the state of the law prior to the January 1993 HQ ruling was settled that cruise lines were not liable for layover-only HMT payments.

We agree, however, with Princess that the combination of the January 1993 HQ ruling that cruise lines were liable for layover-only HMT payments with the evidentiary presumption that all passengers disembarked and/or boarded at the layover port does result in a significant change in the law. In the October 1993 HQ ruling, Customs acknowledged that the evidentiary presumption of the January ruling is "nowhere to be found in either the HMF [HMT] statute or regulations." 1993 U.S. CUSTOM HQ LEXIS 2492, at *19. The imposition of such a strong and unprecedented presumption with no basis in either the statute or regulations changes the law in a significant way.

In its October 1993 HQ ruling, Customs analogizes the evidentiary presumption it imposed in the January 1993 HQ ruling in the passenger context to evidentiary

requirements in the transported goods context.  Customs cited 19 C.F.R. § 141.1(a), which provides that "[d]uties and the liability for their payment accrue upon imported merchandise on arrival of the importing vessel within a Customs port with the intent then and there to unlade . . . unless otherwise specially provided for by law."  Based on this language alone, Customs asserts that subsection 141.1(a) establishes an evidentiary presumption as to the unlading of goods.  Yet subsection 141.1(a) says nothing about an evidentiary presumption and, therefore, provides no support for its argument.  Furthermore, even assuming arguendo that subsection 141.1(a) creates an evidentiary presumption applicable to the unlading of goods, its extension to passengers is tenuous, at best, because Congress explicitly differentiated between transported goods and passengers in the HMRA.

Accordingly, we conclude that the imposition of HMT liability for layovers combined with the strong evidentiary presumption in the January 1993 HQ ruling effected a large change in the law.

**2.**

Under the retroactivity analysis set forth in <u>Landgraf</u>, we must also consider "the degree of connection between the operation of the new rule and a relevant past event." 511 U.S. at 270.  Thus, not only must a new rule effect a significant change in the law, but this change must also have a significant connection with past events.

It is undisputed that Princess did not document who actually disembarked and/or boarded at HMT-covered ports.  Before the January 1993 HQ ruling, it was the common understanding among the cruise lines, we are told, that they had no need to create such data.  Thus, the operation of the new rule, the evidentiary presumption, is connected to

a relevant past event, the non-collection of data concerning which passengers disembarked and/or boarded at HMT-covered layover ports.

Further, because Princess did not document which passengers disembarked and/or boarded at HMT-covered layover ports, it will forever and completely be unable to rebut the evidentiary presumption. Princess will thus be overcharged to the extent that some of its passengers did not disembark and/or board at HMT-covered layover ports on cruises at issue in this case. Accordingly, the degree of connection is strong because applying the January 1993 HQ ruling to pre-1993 conduct would result in Princess being overcharged.

**3.**

Finally, we take into account "familiar considerations of fair notice, reasonable reliance, and settled expectations." Landgraf, 511 U.S. at 270. The weight to be given this factor has been the subject of several decisions in other circuits. The Court of Appeals for the Fourth Circuit recently held that this factor does not require a party advancing a retroactivity theory to prove "subjective reliance" on preexisting law. Olatunji v. Ashcroft, 387 F.3d 383 (4th Cir. 2004). The Olatunji court held that "[t]o the extent that it [reliance] could or should be understood as required in order to establish impermissible retroactive effect however, we would insist at most upon objectively reasonable reliance (as opposed to the subjective reliance proposed by the government and the dissent)." Id. at 396. The Court of Appeals for the D.C. Circuit stated:

> The Court observed that "familiar considerations of fair notice, reasonable reliance, and settled expectations" should offer guidance in those hard cases where a finding of retroactivity requires balancing "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event."

Marrie, 374 F.3d at 1207. Thus, the Marrie court appears to view the "familiar considerations" as akin to a tiebreaker in close cases.

In this case, however, we need not resolve the relative weight to be given to the third Landgraf factor because it points in the same direction as the first and second factors. First, the imposition of an evidentiary presumption that cannot possibly be met strongly implicates fairness considerations. Second, the receipt of the Frigge letter magnifies fairness and reliance considerations. The letter stated that cruise lines would not be subject to layover-only HMT liability. Moreover, even though the letter was not an official ruling, it came from a senior Customs official and explicitly stated that the interpretation being conveyed had been obtained from headquarters, not merely the regional office from which the letter was sent.

Accordingly, the third Landgraf factor also suggests that the application of the January 1993 HQ ruling to pre-1993 conduct would result in a prohibited retroactive effect.

**4.**

We thus conclude that the application of the January 1993 HQ ruling to conduct occurring before the ruling was issued would have impermissible retroactive effect because each of the Landgraf factors points in favor of such a conclusion. Specifically, the combined effect of imposing layover-only HMT liability with a strong evidentiary presumption that all passengers disembarked and/or boarded at the layover port worked a significant change in the law. Moreover, applying the evidentiary presumption to pre-1993 conduct would strongly connect the January 1993 HQ ruling with past events, namely, the already completed cruises, and would prejudice Princess and all

other cruise lines who would be overcharged for layover-only HMT liability. Finally, the evidentiary presumption along with the informal letter further demonstrate the unfairness of applying the January 1993 HQ ruling to conduct occurring prior to its being issued.

Because the application would have retroactive effect and Customs has not claimed that such retroactive effect is otherwise permissible, i.e., through delegated authority and clearly expressed intent to apply the January 1993 HQ ruling retroactively, we hold that the January 1993 HQ ruling cannot be applied to conduct occurring prior to the ruling's issuance. We do not address, in the alternative, whether the grounds advanced by the trial court also demonstrate that the January 1993 HQ ruling cannot be applied to conduct that precedes it.

## IV. Princess's Cross-Appeal

Princess's cross-appeal is limited to whether the trial court abused its discretion in awarding prejudgment interest in favor of the government. It is undisputed that no statute or regulation explicitly authorizes prejudgment interest. In the absence of a statute governing the award of prejudgment interest, "the question is governed by traditional judge-made principles." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194 (1995). "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987).

The trial court's decision whether to award prejudgment interest is reviewed for abuse of discretion. United States v. Reul, 959 F.2d 1572, 1578 (Fed. Cir. 1992). An abuse of discretion results if the trial court "made an error of law, or a clear error of

judgment, or made findings which were clearly erroneous." Id. (internal quotation omitted).

**A.**

The trial court agreed with Princess that "Customs' inability to provide Princess with an explanation for the actual basis for some of its bills until late in this litigation [was] appalling." Summary judgment opinion, 217 F. Supp. 2d at 1368. The trial court disagreed, however, with Princess's argument that the government was not entitled to prejudgment interest, reasoning that "the relevant equitable inquiry focuses on when Customs was entitled to the principal APF amounts at issue" and that the government was entitled to prejudgment interest from the time Princess should have made its APF payments. Id.

Princess argues that "[a]nyone familiar with the long and tortured history of this case cannot possibly conclude that the equities lie with the Government here." Princess thus effectively contends that the trial court abused its discretion by making a "clear error of judgment" in balancing the equities.

The degree to which the trial court is to balance equitable factors to determine whether to award prejudgment interest is not easy to discern from the case law. In Rodgers v. United States, the Supreme Court stated,

> As our prior cases show, a persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed. And this Court has generally weighed these relative equities in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obligation, should be fairly compensated for the loss thereby sustained.

332 U.S. 371, 373-74 (1947) (emphasis added); see also Reul, 959 F.2d at 1577-79 (stating that "the Court of International Trade in exercising its equitable powers may in its sound discretion award prejudgment interest" and declining the appellant's "invitation to rebalance the equities"). In West Virginia, however, the Supreme Court stated: "The District Court held that whether interest had to be paid depended on a balancing of equities between the parties; the Court of Appeals rejected such an approach, as do we." 479 U.S. at 311 n.3. Instead, the Supreme Court reasoned that "[p]rejudgment interest is an element of complete compensation" and, therefore, would further the congressional intent underlying the statute in question in that case. Id. at 310-11. We need not resolve any tension among these cases, however, because the result would be the same on the facts of this case.

Here, the trial court found the government's conduct to be "appalling" but determined that the government's acts, though appalling, did not outweigh its right to the "interest it could have earned had it received these APF payments in the ordinary course of business." Summary judgment order, 217 F. Supp. 2d at 1368. Thus, the trial court appropriately focused on the principle of full compensation.

Princess argues that the full compensation rationale for awarding prejudgment interest "is not relevant to this case, of course, since the Government already has possession of the contested amount." Princess's argument is unpersuasive, for even if a party receives payment some time before judgment, the party has still lost the interest it could have earned during the time from when the payment was originally due to when it was received. As stated by the trial court, "Customs is correct in stating that it 'lost'

the interest it could have earned had it received these APF payments in the ordinary course of business." Id.

Accordingly, we hold that the trial court's award of prejudgment interest properly accounted for the principle of complete compensation and, therefore, that no clear error of judgment occurred.

**B.**

Princess further contends that the trial court's award of prejudgment interest was inappropriate because the government has unclean hands. The doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). The trial court has broad discretion under the doctrine of unclean hands. Id. at 815 ("This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." (internal quotation omitted)).

Princess has not shown that the trial court abused its broad discretion in declining to invoke the doctrine of unclean hands. Indeed, Princess has failed to adduce evidence even sufficient to invoke, let alone compel the application of, the doctrine of unclean hands. Princess questions Customs' "competence" and "willingness to address basic calculation errors and discrepancies" in its briefing, but Princess has not provided evidence of "inequitableness or bad faith" as required to invoke the doctrine of unclean hands. See id. at 814.

## C.

Princess finally argues that the trial court abused its discretion in awarding prejudgment interest by making an error of law. Princess identifies two interest periods in this case, labeling them as a "pre-billing interest" period and prejudgment interest period. Pre-billing interest refers to interest accruing from the time a cruise line was required to make a payment until the time the cruise line was billed. Prejudgment interest, under Princess's view, covers only the time after the cruise line is billed until judgment. Princess thus contends that the trial court erred as a matter of law by awarding pre-billing interest.

As noted above, "[p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered." West Virginia, 479 U.S. at 310 n.2 (emphasis added). If a claim accrues at the time of billing, then prejudgment interest accrues from the time of billing. If, on the other hand, a claim accrues at a time before billing, then prejudgment interest accrues from that pre-billing time. Accordingly, the labels Princess advances are unnecessary because the dispositive issue is determining when a claim accrues, not when a bill was sent.[2]

Princess quotes from Reul, which states that "the entire weight of authority holds that a surety cannot be taxed with interest on the principal's debt until demand is made upon the surety for payment of the principal's obligation." 959 F.2d at 1579. The

---

[2] Princess argues that the standard of review over the trial court's decision to award interest is not abuse of discretion, because "[i]t is, however, the pre-billing interest award that Princess Cruises is challenging, and thus the de novo standard of review for grants and denials of summary judgment is the proper standard of review for this issue." Because we reject Princess's distinction between pre-billing interest and prejudgment interest, we also reject its argument as to the appropriate standard of review.

holding in <u>Reul</u> that prejudgment interest did not apply before a demand was made is not generally applicable, however, because it followed from the rule that "interest can be charged against the surety only from the date of demand on it, <u>because until then the surety is not in default</u>." <u>Id.</u> at 1581 (internal quotation omitted, emphasis added). Princess has made no argument that it was only secondarily liable as a surety for making APF payments. Instead, Princess was obligated to make APF payments during the ordinary course of business and, therefore, was in "default" when it failed to make timely payments.

Princess finally cites Customs' October 1993 HQ ruling, which addressed a number of issues, including layover-only HMT liability and the following:

> Under the provisions of 19 U.S.C. 1505(c), duty amounts fixed by liquidation or reliquidation are considered delinquent if not paid within 30 days. Interest on delinquent accounts accrues from the 15th day after liquidation or reliquidation. Inasmuch as the APF and HMF [HMT] are considered to be duties for administrative and enforcement purposes, the failure to pay these fees can result in the accrual of interest once the debt is fixed. <u>In our view, the debt becomes fixed once it is billed to the principal and surety.</u>

1993 U.S. CUSTOM HQ LEXIS 2492, at *42-*43.

The quoted analysis of the October 1993 HQ ruling, however, is rooted in a statute not at issue here and, therefore, has no application in this case. In this case, the trial court did not rely on that section in assessing prejudgment interest. And, in fact, even Princess agrees on appeal that section 1505(c) does not provide a statutory basis for prejudgment interest. Accordingly, we hold that the trial court did not abuse its discretion in its award of prejudgment interest.

## V. Conclusion

In sum, we affirm the trial court's determination that Princess is not liable for pre-1993 layover-only HMT payments. We also affirm the trial court's award of prejudgment interest to the government from the time that Princess was obligated to make the payments in the ordinary course of business.

<u>AFFIRMED</u>