# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-3543

PHILLIP G. CLINE , APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 13, 2012                                   Decided August 16, 2012)

*Kenneth M. Carpenter,* of Topeka, Kansas, for the appellant.

*Shanti L. Hageman,* Appellate Attorney; with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Justin P. Zimmer*, Acting Deputy Assistant General Counsel; all of Washington, D.C., joined, for the appellee.

Before HAGEL, LANCE, and DAVIS, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed a dissenting opinion.

HAGEL, *Judge*: Phillip G. Cline appeals through counsel a July 1, 2010, Board of Veterans' Appeals (Board) decision that granted entitlement to an initial disability rating of 70%, but no higher, for post-traumatic stress disorder, effective May 6, 1999, but no earlier.[1]  Mr. Cline's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a).  Because the Board improperly applied amended 38 C.F.R. § 3.156(c)(2) retroactively, the Court will vacate that portion of the July 2010 Board decision that determined that an effective date prior to May 6, 1999, was not warranted and remand that issue for readjudication consistent

---

[1] The Board also remanded the matter of entitlement to a total disability rating based on individual unemployability, and that matter is not before the Court at this time.  *See* 38 U.S.C. § 7266 (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

with this decision. Because the Board properly considered and applied all applicable laws and regulations concerning the proper disability rating to be assigned for post-traumatic stress disorder, the Court will affirm the remainder of the Board decision.

## I. FACTS

Mr. Cline served on active duty in the United States Army from July 1970 to March 1972, including service in Viet Nam.

In January 1993, Mr. Cline sought entitlement to benefits for post-traumatic stress disorder. The following month, he submitted a post-traumatic stress disorder stressor questionnaire identifying several stressors. In response to the question, "Did you have any civilian friends killed, wounded, or executed," Mr. Cline stated that a "friend drowned" while Mr. Cline was stationed with the 25th Infantry, 3rd Squadron, 17th Air Cavalry, but he did not identify the friend by name. Record (R.) at 1920. In response to the question "How many civilians were involved," Mr. Cline wrote zero. *Id.*

At a May 1993 VA examination, Mr. Cline reported to the examiner that, while he was in Viet Nam, his unit underwent numerous rocket and mortar attacks and he witnessed many people wounded, maimed, and killed. The examiner ultimately concluded that, although it was possible that Mr. Cline previously had a "mild case" of post-traumatic stress disorder, "it would appear that he no longer has sufficient symptoms to warrant the diagnosis." R. at 761. In June 1993, based largely on this examination report, a VA regional office denied Mr. Cline's claim for benefits. Mr. Cline did not appeal that decision, and it became final.

In May 1999, Mr. Cline sought to reopen his claim for benefits for post-traumatic stress disorder. In September 1999, the regional office determined that Mr. Cline had not submitted new and material evidence establishing a diagnosis of post-traumatic stress disorder or a confirmed stressor and therefore declined to reopen the claim.

A March 2000 VA progress note contains a diagnosis of post-traumatic stress disorder. As a basis for that diagnosis, the examiner recorded the following:

> The patient reports recurrent, intrusive distressing recollections of being in Vietnam. The patient reports that his dreams are "about my buddy that got killed." The patient's friend (Butch) was killed when he was out on a mission and drowned.

2

When the body was brought back to the unit, the patient requested to see the body one more time before it was prepared for departure to the United States. The patient remembers, "They unzipped the bag. He drowned. They had to send the Seals out to get him. I thought I wanted to see him before he went home. It was not a good idea." The patient cannot forget the disfigurement of his friend.

R. at 1796.

In July 2000, Mr. Cline submitted a post-traumatic stress disorder questionnaire in which he reported that his friend "Butch" was killed two weeks before his tour of duty was up. R. at 1764-66. In March 2001, the regional office asked Mr. Cline to "better identify the soldier" he referred to as "Butch." R. at 1735; *see also* R. at 1737 (December 2000 deferred rating decision). It does not appear that Mr. Cline responded to that request. In January 2002, the regional office denied entitlement to benefits for post-traumatic stress disorder because "there is no corroborated stressor basis for a diagnosis of this condition." R. at 1728. Mr. Cline filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

In August 2003, Mr. Cline sent a statement to VA outlining numerous claimed stressors. At that time, he identified "Butch" as Robert Clifton. R. at 1504. In March 2005, VA sought to corroborate Mr. Cline's account via the Center for Unit Records Research. In July 2005, VA received the following response:

Our U.S. Army casualty data base reports Specialist Four Robert Clifton was drowned on October 23, 1971. Specialist Clifton was assigned to Alpha Troop 3rd Squadron[,] 17th Air Cavalry[,] located at Dí An, Republic of South Vietnam, at the time of his death. This was also Mr. Cline's unit of assignment during his tour in the Republic of Vietnam.

R. at 1067. In September 2005, a VA examiner confirmed Mr. Cline's diagnosis of post-traumatic stress disorder based on the drowning of a fellow soldier, "the only stressor that has been verified." R. at 1001.

In February 2006, based on confirmation of Mr. Cline's claimed stressor and resulting confirmed diagnosis, the regional office granted entitlement to benefits for post-traumatic stress disorder and assigned a 30% disability rating, effective April 24, 2000. Mr. Cline filed a Notice of Disagreement with that decision.

In January 2008, after several interim decisions, the regional office ultimately issued a Statement of the Case granting an effective date of May 6, 1999, for the initial award of benefits for post-traumatic stress disorder, assigning a 50% disability rating for that condition effective from that date, and assigning a 70% disability rating from January 22, 2007. Mr. Cline appealed to the Board.

In July 2010, the Board issued the decision on appeal. With respect to the effective date for the initial award of benefits for post-traumatic stress disorder, the Board considered whether the response from the Center for Unit Records Research regarding the death of Specialist Clifton could satisfy 38 C.F.R. § 3.156(c)(1), which permits an effective date as of the original date of the claim (here, January 1993) in cases where service department records later associated with the claims file form the basis of the ultimate award of benefits. The Board concluded that, while the response from the Center for Unit Records Research was "likely the type of information contemplated" by the regulation (R. at 13), Mr. Cline's situation was more properly considered under § 3.156(c)(2), which states that subsection (a) does not apply where "the claimant failed to provide sufficient information for VA to identify and obtain the records." In particular, the Board found that Mr. Cline did not provide sufficient information in January 1993 for VA to attempt to corroborate his claimed stressor–seeing a friend or fellow soldier drown–with the Center for Unit Records Research. The Board stated that, although Mr. Cline did reference a friend's drowning at the time of his January 1993 application, he "did not provide the names of any casualties at that time and he stated that the names of any casualties were unknown." R. at 13-14.

With respect to the disability ratings assigned for post-traumatic stress disorder, the Board reviewed the medical evidence of record and determined that a 70% disability rating was warranted for the period prior to January 21, 2007, but that no higher disability rating was warranted at any time.

## II. ANALYSIS

### A. Earlier Effective Date

On appeal, Mr. Cline first contends that the Board erred in finding that an earlier effective date was not warranted because the Board failed to correctly apply 38 C.F.R. § 3.156(c). Specifically, Mr. Cline asserts that the Board "mistakenly concluded" that the exception of

§ 3.156(c)(2) applies to his case and "mistakenly attempted to distinguish" *Vigil v. Peake*, 22 Vet.App. 63 (2008), which Mr. Cline contends was rejected by the Court in *Mayhue v. Shinseki*, 24 Vet.App. 273 (2011). Appellant's Brief (Br.) at 3-4.

The Board determined that Mr. Cline first submitted the necessary information to verify his claimed stressor–that is, the name of his friend who drowned–some time after he submitted his May 6, 1999, request to reopen.[2] R. at 14. As a result of receiving this information, the regional office granted his claim for benefits for post-traumatic stress disorder in an February 2006 rating decision and ultimately assigned an effective date of May 6, 1999. It is clear, then, that Mr. Cline submitted his claim to reopen, provided the information necessary to verify his stressor, and was awarded benefits all prior to October 2006 when amendments to § 3.156(c), including the addition of subsection (c)(2) discussed below, took effect. Therefore, the Board's application of § 3.156(c)(2) in this case is only proper if it applies retroactively to claims pending when the amendments took effect.

*1. History of 38 C.F.R. § 3.156(c)*

a. Regulatory History

To address this question, the Court must first consider the history of 38 C.F.R. § 3.156(c). In February 2006, when Mr. Cline was initially awarded benefits for post-traumatic stress disorder and assigned an April 2000 effective date, 38 C.F.R. § 3.156(c) provided, in pertinent part:

> Where the new and material evidence consists of a supplemental report from the service department, received before or after the decision has become final, *the former decision will be reconsidered* by the adjudicating agency of original jurisdiction. This comprehends official service department records which presumably have been misplaced and have now been located and forwarded to the Department of Veterans Affairs. Also included are corrections by the service department of former errors of commission or omission in the preparation of the prior report or reports and

---

[2] The Board's discussion is oddly opaque on this point, but it has not escaped the Court's notice that Mr. Cline did not actually provide Specialist Clifton's name until 2003. R. at 1504. The Board does not explain why, if Mr. Clifton's name was the crucial piece of information needed to permit VA to seek corroborating records from the service department, an effective date of April 2003 was not more appropriate. Nevertheless, because of the Court's finding regarding the inapplicability of amended § 3.156(c)(2) and the fact that the Board's assignment of a May 1999 effective date is favorable to Mr. Cline, the Court need not concern itself further with the Board's vague discussion. *See McClain v. Nicholson*, 21 Vet.App. 319 (2007) (holding that the Court may not overturn uncontested favorable findings of the Board). The Court reminds the Board, however, that it is required to provide an adequate statement of reasons or bases for all of its conclusions. 38 U.S.C. § 7104(d)(1).

identified as such. . . . Where such records clearly support the assignment of a specific rating over a part or the entire period of time involved, a retroactive evaluation will be assigned accordingly except as it may be affected by the filing date of the original claim.

38 C.F.R. § 3.156(c) (2005) (emphasis added). At that time, 38 C.F.R. § 3.400(q)(2) provided that, when the new and material evidence submitted was service department records, the effective date of the claim would be: "To agree with evaluation (since it is considered these [service department] records were lost or mislaid) or date of receipt of claim on which prior evaluation was made, whichever is later, subject to rules on original claims filed within 1 year after separation from service." 38 C.F.R. § 3.400(q)(2) (2005). The Secretary has previously summarized the relationship between these provisions as follows: "In practice, when VA receives service department records that were unavailable at the time of the prior decision, VA may reconsider the prior decision, and the effective date assigned will relate back to the date of the original claim, or the date entitlement arose, whichever is later."[3] 70 Fed. Reg. 35,388, 35,388 (June 20, 2005).

In June 2005, the Secretary proposed to amend § 3.156(c) "to establish clearer rules regarding reconsideration of decisions on the basis of newly discovered service department records" and "to include the substance of current 38 C.F.R. 3.400(q)(2) in revised § 3.156(c)." *Id.* Of particular importance to this appeal, the Secretary added § 3.156(c)(1) which provides:

Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1) (2010).[4] In the proposed rule, the Secretary explained that § 3.156(c)(1) specifically applied to "unit records, such as those obtained from the Center for Research of Unit

---

[3] Although the Secretary's explanation implies a degree of discretion on his part in undertaking such reconsideration, stating that VA "may" reconsider its prior decision, the 2005 regulation is clear that such reconsideration was mandatory when service department records were added to the file (i.e., "the former decision *will* be reconsidered . . . .").

[4] Paragraph (a), which is not relevant here, provides that "a claimant may reopen a finally adjudicated claim by submitting new and material evidence" and defines "new evidence" and "material evidence." 38 C.F.R. § 3.156(a) (2012).

Records (CRUR) that pertain to military experiences claimed by a veteran. Such evidence may be particularly valuable in connection with claims for benefits for post traumatic stress disorder." 70 Fed. Reg. at 35,388. Section 3.156(c)(1)'s broad statement was limited by the creation of § 3.156(c)(2), which provides:

> Paragraph (c)(1) of this section does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim, *or because the claimant failed to provide sufficient information for VA to identify and obtain the records* from the respective service department, the Joint Services Records Research Center, or from any other official source.

38 C.F.R. § 3.156(c)(2) (2010) (emphasis added). As the Secretary explained, "[t]his limitation *would* allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government, but limited by the extent to which the claimant has cooperated with VA's efforts to obtain these records." 70 Fed. Reg. at 35,388 (emphasis added). The amendments to § 3.156(c) became effective on October 6, 2006, and were not expressly made retroactive. *See* 71 Fed. Reg. 52,455 (Sept. 6, 2006). Consequently, prior to October 2006, the effective date of the amended regulation, there was no limitation on VA's ability to reconsider previously decided claims in light of the submission of new and material service department records.

### b. *Vigil v. Peake*

In *Vigil*, as the Board discussed, the veteran was denied entitlement to benefits for post-traumatic stress disorder after a VA examiner determined that he did not suffer from that condition. After he sought to reopen his claim and submitted evidence of a current diagnosis, he was granted benefits for post-traumatic stress disorder when evidence was obtained from the United States Armed Services Center for Research of Unit Records (now known as the Army & Joint Services Records Research Center). The Center for Research of Unit Records provided the regional office with unit records describing an explosion at an ammunition dump that the veteran previously described as one of his stressors. The regional office relied, in part, on those records to award benefits, as the information in the records served to verify and support the veteran's claimed in-service stressor. The regional office assigned an effective date as of the date of the claim to reopen, and the veteran appealed.

7

In its decision, which was rendered under the pre-amendment version of § 3.156(c), the Board determined that § 3.156(c) did not apply, and therefore no reconsideration was required, because the records obtained and ultimately relied upon had not been misplaced or erroneously omitted and were therefore not the types of records contemplated by the regulation and because there was no diagnosis of post-traumatic stress disorder at the time of the original decision denying the veteran's claim.

On appeal, the Court applied the clarifying statements contained in the Secretary's proposed rule and held that pre-amendment § 3.156(c), like amended § 3.156(c)(1) and (c)(3), "authorize[d] an effective date [for a claim reconsidered based on newly discovered service department records] as early as the date of the original claim up to the date of the claim to reopen." *Vigil*, 22 Vet.App at 65. Accordingly the Court concluded that the Board erred in finding that § 3.156(c) was inapplicable to the veteran's claim and remanded for the Board to apply that regulation. In so deciding, the Court accepted the parties' agreement that the clarifying statements in the proposed rule amending § 3.156(c) "should govern the interpretation of the pre-amended § 3.156(c), *wherever relevant in this case*." *Id.* (emphasis added). The Court then explained that the clarifying statements in the proposed rule were relevant only insofar as they established that

> (A) Applicability of [pre-amendment] § 3.156(c) did not depend on whether the newly acquired service records were corrected records or had been misplaced at the time a claim was filed, (B) [pre-amendment] § 3.156(c) authorize[d] an effective date as early as the date of the original claim up to the date of the claim to reopen, and (C) application of [pre-amendment] § 3.156(c) require[d] a retroactive evaluation of disability.

*Id.* The Court explicitly limited its analysis of the clarifying statements in the proposed rule to these three issues and did not address whether it was VA's practice under pre-amendment § 3.156(c) to prohibit reconsideration of a previously denied claim on the basis of newly associated service department records where the claimant did not provide sufficient information for VA to identify and obtain the records from the respective service department at the time that the claim was initially decided. *Id.* The facts of *Vigil* simply did not raise this issue. In addition, the Court explicitly stated that it was not holding that amended § 3.156(c) was retroactive, or even that § 3.156(c) was applicable in that case:

8

Contrary to the view of our dissenting colleague, we are not holding that [pre-amendment] § 3.156(c) warrants an earlier effective date in this case or all cases that are denied for a lack of diagnosis and later reopened and granted, in part, on service records not obtained previously, or that [pre-amendment] § 3.156(c) necessarily is for application here. Rather, we are holding that the Board's decision that [pre-amendment] § 3.156(c) does not apply to Mr. Vigil's claim rests on a faulty premise.

*Vigil*, 22 Vet.App. at 66 n.3.

### c. *Mayhue v. Shinseki*

In *Mayhue*, the veteran argued that the Board erroneously applied the amended version of §3.156(c) to his claim retroactively, and, alternatively, that if the amended version did apply, he did not fall within the purview of subsection (c)(2).

The Court extensively recounted the history of § 3.156(c) and, in discussing new §§ 3.156(c)(1) and (c)(3), stated that those amendments "were *not* intended to be substantive changes to VA's well-established practice of reconsidering claims based on newly discovered service department records and assigning an effective date as early as the date that the initial claim was filed." *Mayhue*, 24 Vet.App. at 278. After analyzing *Vigil*, the Court in *Mayhue* stated: "[U]nder either pre-amendment or amended § 3.156(c), a claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim." *Id.* at 279. The Court in *Mayhue* expressly declined to address the question of retroactivity squarely raised by Mr. Cline in this case because it found that the information that VA ultimately relied upon to obtain the service department records that formed the basis for granting Mr. Mayhue's claim had been in Mr. Mayhue's claims file all along. The Court, therefore, also did not consider whether the addition of § 3.156(c)(2) amounted to a substantive change in regulation. *Id.* ("Even assuming the Secretary's view that § 3.156(c)(2) . . . codified VA's long-standing practice of limiting reconsideration of claims based on a claimant's lack of cooperation–the view least favorable to the veteran–the Court finds that § 3.156(c)(2) was not for application in this case."). We will now do so.

Substantive rules "'grant rights, impose obligations, . . . [and] narrowly constrict the discretion of agency officials by largely determining the issue addressed,'" whereas interpretative rules "'express the agency's intended course of action or its tentative view of the meaning of a

particular statutory term'" and do not "'foreclose alternative courses of action or conclusively affect rights of private parties.'" *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 908-09 (5th Cir. 1983) (quoting *Batterton v. Marshall*, 648 F.2d 694, 701-02 (D.C. Cir. 1980) (footnotes omitted)); *see also Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998) (stating that interpretative rules are those that clarify or explain existing law or regulation); *Air India v. Brien*, 261 F. Supp. 2d 134, 141 (E.D.N.Y. 2003) (stating that substantive rules create new law, rights, or duties, in what amounts to a legislative act, while interpretive rules merely clarify an existing statute or regulation). Here, although the Secretary asserted at oral argument that the addition of subsection (c)(2) was merely intended as clarification of past practice, there is simply no evidence that this is so. In proposing the addition of subsection (c)(2), the Secretary wrote:

> We propose in § 3.156(c)(2) to limit the application of this rule by stating that it "does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim, or the claimant failed to provide VA sufficient information for VA to identify and obtain the records from the respective service department, the Center for Research of Unit Records, or from any other official source." Reconsideration based upon service department records *would* not be available in cases where the claimant did not provide information that would have enabled VA or another federal agency to identify and search for relevant records. This limitation *would* allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government, but limited by the extent to which the claimant has cooperated with VA's efforts to obtain these records.

70 Fed. Reg. at 35,389 (emphasis added). There is no indication in this statement that it had been VA's regular practice to decline to reconsider prior claims where claimants were found to have provided incomplete evidence. In fact, the use of the auxiliary verb "would" indicates what VA anticipated would happen in the future *because* of this change.

Additionally, the Court need not accept VA's characterization of the action. *See Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). The plain language of § 3.156(c)(2), when compared to the plain language of pre-amendment § 3.156(c), created a bar to reconsideration based on newly associated service department records in particular circumstances where absolutely no bar previously existed. Accordingly, the Court concludes that the addition of subsection (c)(2), effective October 2006, was a substantive rule change. Having found the change

10

in regulation to be substantive, we now consider whether amended § 3.156(c)(2) may be applied retroactively, as the Board did here.

## 2. Retroactivity

As an initial matter, the Court notes that "[r]etroactivity is not favored by the law," and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In *Princess Cruises, Inc. v. United States*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) announced three factors that the Court must weigh to determine whether a regulation should be given retroactive effect: (1) "'the nature and extent of the change of the law;'" (2) "'the degree of connection between the operation of the new rule and a relevant past event,'" (3) and "'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" 397 F.3d 1358, 1364 (Fed. Cir. 2005) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994)). In the instant case, each of these factors weighs against giving retroactive effect to amended § 3.156(c).

First, the nature and extent of the change in law is substantial. As discussed above, when § 3.156(c)(2) became effective in October 2006, it created a bar to reconsideration of claims based on the submission of new and material service department records where none had previously existed–that is, VA was no longer required to reconsider claims where the claimant failed to provide sufficient information to identify and obtain the service department records. Creating a complete bar to reconsideration where no limitation of any kind existed before is analogous to the "large change in the law" found in *Princess Cruises* where the U.S. Bureau of Customs and Border Protection imposed a 100% harbor maintenance tax on cruise ships where there had previously been none. *See* 397 F.3d at 1364-65; *cf. Tarver v. Shinseki*, 557 F.3d 1371, 1375 (Fed. Cir. 2009) (holding that a change in the law governing dependency and indemnity compensation claims was not significant because the amended regulation merely reinstated VA's earlier interpretation of a statute); *Rodriguez v. Peake*, 511 F.3d 1147 (Fed. Cir. 2008) (same). Accordingly, the nature and extent of the change in law is substantial and weighs strongly against giving retroactive effect to amended § 3.156(c).

There is also a high degree of connection between the operation of the new rule and a relevant past event. In *Princess Cruises*, the amount of harbor maintenance tax that the cruise line would have to pay hinged on how many passengers either disembarked or boarded at layover ports subject to the tax, and, prior to the imposition of this tax, the cruise line never had to collect or maintain this data. 397 F.3d at 1366. Accordingly, the Federal Circuit found that the degree of connection was strong because application of the new law to the previous conduct would necessarily result in the cruise line being overcharged because it could not retroactively obtain the information necessary for a proper assessment. *Id.* Likewise, retroactive application of § 3.156(c)(2) would necessarily impose a penalty on Mr. Cline for conduct that was not previously prohibited.[5] Therefore, there is a high degree of connection between the operation of amended § 3.156(c)(2) and Mr. Cline's submission of information in connection with his claim to reopen his previously denied claim for benefits for post-traumatic stress disorder.

Finally, familiar considerations of fair notice, reasonable reliance, and settled expectations counsel against giving amended § 3.156(c)(2) retroactive effect. Here, the Secretary made the amendments to § 3.156(c) effective October 2006 and did not specifically make them retroactive. *See* 71 Fed. Reg. at 52,455. As the Supreme Court explained in *Landgraf*, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." 511 U.S. at 265. Mr. Cline was not given notice of any kind that the Secretary intended to create a new bar to reconsideration before he ultimately provided information sufficient to verify his stressor. Accordingly, the familiar considerations of fair notice, reasonable reliance, and settled expectations also weigh in Mr. Cline's favor.

Consequently, because all three *Princess Cruises* factors weigh against giving retroactive effect to amended § 3.156(c)(2), the Court concludes that the Board erred in retroactively applying that regulation's exception to deny Mr. Cline entitlement to an earlier effective date for his service-

---

[5] For purposes of this analysis, the Court assumes, without deciding, that Mr. Cline failed to provide sufficient information in January 1993 for VA to identify and obtain his service department records because if he had, § 3.156(c)(2) would not apply. *See Mayhue*, 24 Vet.App. at 279; 38 C.F.R. § 3.156(c)(2) (2012).

connected post-traumatic stress disorder.[6] Accordingly, the Court will vacate that part of the Board's decision that denied entitlement to an earlier effective date for post-traumatic stress disorder and remand the matter for the Board to apply 38 C.F.R. § 3.156(c) (2005). Specifically, the Board must determine the proper effective date for Mr. Cline's award of benefits for post-traumatic stress disorder, irrespective of the date on which he provided sufficient information for VA to obtain the service department records, and which may be as early as the date of the original claim. *See Mayhue*, 24 Vet.App. at 279; *Vigil*, 22 Vet.App at 65; 38 C.F.R. § 3.156( c)(3) (2012); 38 C.F.R. § 3.400(q) (2005). On remand, Mr. Cline is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

## B. Disability Rating

Mr. Cline also argues that the Board erred in denying a higher initial disability rating for post-traumatic stress disorder. In that regard, he contends that the Board failed to correctly apply 38 C.F.R. § 4.3, which provides:

> It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant.

Mr. Cline's argument focuses on three Global Assessment of Functioning[7] scores under 50 that had been assigned, *see* R. at 1445 (score of 40), 749 (score of 45), 486 (score of 40), and contends that they "supported the assignment of a 100% [disability] rating," as opposed to the 70% disability rating the Board assigned. Appellant's Br. at 13. He argues that these scores "raise[] a reasonable doubt regarding the degree of disability of [his] service[-]connected psychiatric disability." *Id.*

The Court reviews the Board's application of the benefit of the doubt rule under the "clearly erroneous" standard of review. *See Roberson v. Principi*, 17 Vet.App. 135, 146 (2003). Although

---

[6] Because the amended version of § 3.156(c)(2) does not apply retroactively, the Court need not address Mr. Cline's alternative argument regarding the sufficiency of the information he provided to VA.

[7] A Global Assessment of Functioning score represents "the clinician's judgment of the individual's overall level of functioning" and is "useful in planning treatment and measuring its impact[ ] and in predicting outcome." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994); *see Richard v. Brown*, 9 Vet.App. 266, 267 (1996).

Mr. Cline is correct that the record contains three Global Assessment of Functioning scores below 50, and that these scores are probative because they relate to the veteran's level of impairment as contemplated by the rating criteria for mental disorders, they are not dispositive of the proper level of disability. *See Massey v. Brown*, 7 Vet.App. 204, 207 (1994).

Here, the Board considered *all* of Mr. Cline's Global Assessment of Functioning scores, along with evidence of his actual post-traumatic stress disorder symptoms. *See* 38 C.F.R. § 4.126(a) (2012) ("When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record ."). In fact, the Board assigned a 70% disability rating for the entire rating period in part *because* of Mr. Cline's Global Assessment of Functioning scores of 40 and 45. *See* R. at 20-21. To the extent that Mr. Cline contends that Global Assessment of Functioning scores below 50 necessarily correlate to a 100% disability rating, he argues with the way in which the Board weighed the evidence but does not demonstrate that the Board clearly erred in this regard. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995).

Moreover, to the extent that the Board did not expressly state that there was no reasonable doubt regarding the proper disability rating, Mr. Cline has not demonstrated a requirement that the Board do so. Further, it is clear from the Board's extensive discussion of the evidence and the criteria for the various disability ratings for post-traumatic stress disorder that there was no reasonable doubt in this regard. Mr. Cline has also not demonstrated that he has been harmed in any way by the Board's failure to expressly state that it had considered and applied § 4.3. *See Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004); *see also* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error").

Finally, Mr. Cline argues that the Board failed to correctly apply 38 C.F.R. § 4.7, which requires assignment of a higher disability rating where "the disability picture more nearly approximates the criteria required for that rating." 38 C.F.R. § 4.7 (2012). As discussed above, however, the Board extensively considered the evidence of record and expressly explained its determination that Mr. Cline's disability picture "more nearly approximates" a 70% disability rating. *See* R. at 20-22. Mr. Cline again merely disagrees with the way in which the Board weighed the

14

evidence. He has not demonstrated that the Board's determination is clearly erroneous or is unsupported by adequate reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Owens*, 7 Vet.App. at 433; *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

## III. CONCLUSION

Upon consideration of the foregoing, that portion of the July 1, 2010, Board decision that denied entitlement to an effective date prior to May 6, 1999, for the award of benefits for post-traumatic stress disorder is VACATED and the claim is REMANDED for readjudication consistent with this decision. The remainder of the Board decision is AFFIRMED.

LANCE*, Judge*, dissenting in part: I fully agree with the majority that Mr. Cline is not entitled to an increased disability rating for his post-traumatic stress disorder (PTSD). However, as I believe that amended § 3.156(c)(2) does not have an impermissible retroactive effect, I would affirm, rather than remand, the Board's determination as to the proper effective date for the award of service connection for PTSD, and so I must respectfully dissent on that issue.

When VA amended § 3.156(c), it did not do so in a vacuum. Rather, as the Secretary made clear in his Federal Register notice proposing the amended regulation, VA's intent was to combine the provisions of § 3.156(c) with those of § 3.400(q)(2) and, in so doing, clarify existing VA practice to preclude a less favorable reading of those regulations. *See* 70 Fed. Reg. 35,388, 35,388 (June 20, 2005) ("We propose to include the substance of current [§] 3.400(q)(2) in revised § 3.156(c)."). Thus, to ascertain whether § 3.156(c)(2) represents a substantive change, it must be compared not just to pre-amendment § 3.156(c) but also to § 3.400(q)(2).

Pre-amendment § 3.400(q)(2), which governs the effective date for service connection after the discovery of previously unavailable service department records, states that VA will grant an earlier effective date on the basis of relevant service department records "since it is considered these records were lost or mislaid." 38 C.F.R. § 3.400(q)(2) (2005); *see also* § 3.156(c) (2005) ("This comprehends official service department records which presumably have been misplaced and have now been located and forwarded to [VA]."). In other words, under the plain language of pre-amendment §§ 3.156(c) and 3.400(q)(2), entitlement to an earlier effective date on the basis of newly

15

discovered service records hinges on whether those records were lost or missing at the time of the original decision.

Nothing in the regulatory history contradicts this plain meaning; indeed, the Secretary's statements indicate that he intended the amendments to liberalize, not restrict, the situations under which a claimant could be entitled to an earlier effective date:

> Even though *the current language can be read as a limitation*, in practice, VA does not limit its reconsideration to "misplaced" service department records. Rather, VA intended the reference to misplaced records as an example of the type of service department records that may have been unavailable when it issued a decision on a claim. *The proposed revision to § 3.156(c) removes this ambiguity*.

70 Fed. Reg. at 35,388 (emphasis added); *see also Auer v. Robbins*, 519 U.S. 452, 461–62 (1997) (noting that deference must be afforded to an agency's interpretation of a regulation); *Smith v. Nicholson*, 451 F.3d 1344, 1349–50 (Fed. Cir. 2006) (the Secretary's interpretation of his own regulations is "'of controlling weight unless it is plainly erroneous or inconsistent with the regulation'" (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))).

In short, both the plain meaning of the regulations and the Secretary's statements of intent make clear that the 2006 amendments were intended to liberalize § 3.156(c) to reflect VA practice, and that § 3.156(c)(2), rather than creating a bar to existing relief, was designed only to limit the reach of the liberalization. The majority ignores this distinction by focusing on the use of the word "would" in the Secretary's description of the effects of amended § 3.156(c)(2), *see ante* at __. However, when viewed in light of my analysis above, it is clear that use of the word "would" merely signifies the Secretary's intent to limit the scope of the proposed liberalization.

Neither *Vigil v. Peake*, 22 Vet.App. 63 (2008), nor *Mayhue v. Shinseki*, 24 Vet.App. 273 (2011), contradict this view. In *Vigil*, the Court held only that unit records fell within the category of records contemplated by pre-amendment § 3.156(c). 22 Vet.App. at 66. It did not, however, interpret the provisions of § 3.400(q)(2), nor did it discuss under what situations § 3.156(c) was for application. *Compare id.* at 66 n.3 ("[W]e are not holding that § 3.156(c) warrants an earlier effective date in this case . . . or that § 3.156(c) necessarily is for application here.") *with id*. at 67 (Lance, J., dissenting) ("I believe that unavailable service records are those that VA had a duty to

16

seek and, for whatever reason, was not able to obtain."). Similarly, *Mayhue*, as the majority notes, explicitly declined to reach the issue of whether amended § 3.156(c)(2) has an impermissible retroactive effect. 24 Vet.App. at 279.

Thus, as I read pre-amendment §§ 3.156(c) and 3.400(q)(2), VA technically had no duty to readjudicate claims based on newly discovered service department records unless those records were lost or unavailable at the time of the original decision. Given this interpretation of these regulations, I would hold that amended § 3.156(c)(2) does not have an impermissible retroactive effect, as it does not represent a departure from the pre-amendment regulations. In particular, reading pre-amendment §§ 3.156(c) and 3.400(q)(2) as applying only to records that were lost or missing at the time of the original decision forecloses application of those regulations to records that were not before VA for other reasons, such as negligence on the part of the Department of Defense or National Archives and Records Administration in forwarding records to VA, failure by VA to request adequately identified records, or where VA had no duty to obtain the records, either due to a claimant's failure to adequately identify records or because the duty did not otherwise arise.

Although the Secretary specifically clarified that amended § 3.156(c) applied in cases of administrative error, he did not extend this liberalization to records not obtained by VA due to an appellant's failure to adequately identify them. *See* 70 Fed. Reg. at 35,389 ("This limitation would allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government."). Thus, in cases where an appellant did not adequately identify relevant unit records, neither the pre-amendment nor amended regulations allows for an earlier effective date on the basis of those records, and so amended § 3.156(c)(2) does not represent a change in the substance of the law.

Here, there is no indication that the appellant's unit records were lost or missing at the time of the 1993 decision. Rather, VA simply had no duty to obtain those records. Under the laws and regulations at the time of the 1993 decision, VA had no duty to assist a claimant unless there was a well-grounded claim. *See Morton v. West*, 12 Vet.App. 477, 486 (1999), *withdrawn*, *Morton v. Gober*, 14 Vet.App. 174 (2000) (per curiam order), *and superseded by statute*, Veterans Claims Assistance Act of 2000 (VCAA), Pub L. No. 106-475, 114 Stat. 2096, *as recognized in Duenas v. Principi*, 18 Vet.App. 512 (2004). For a claim to be well grounded, the record had to contain (1)

17

medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table), *superseded by statute*, VCAA, *as recognized in Duenas*, *supra*. Absent a diagnosis of PTSD, the appellant's claim was not well grounded, and so VA had no duty to assist him in obtaining his unit records. *See Morton* and *Caluza*, both *supra*.

In the alternative, even were I to read the 1993 RO decision as implicitly finding that the appellant's claim was well grounded, I would hold that the Board did not clearly err when it determined that VA lacked sufficient information in 1993 to verify the appellant's stressor. R. at 13; *see* 38 U.S.C. § 7261(a)(4); *Hood v. Shinseki*, 23 Vet.App. 295, 299 (2009) (holding that the Court reviews the Board's factual findings under the "clearly erroneous" standard). In either case, VA had no duty to obtain the appellant's unit records at the time of the 1993 decision, and so neither pre-amendment nor current § 3.156(c) is for application. *See* 38 C.F.R. § 3.159(c)(2)(i) (2012) ("The claimant must cooperate fully with VA's reasonable efforts to obtain relevant records" by providing "enough information to identify and locate the existing records"); 38 C.F.R. § 3.159(b) (1993) ("When information sufficient to identify and locate necessary evidence is of record, [VA] shall assist a claimant by requesting . . . existing evidence which is either in the custody of military authorities or maintained by another Federal agency.").

Although Title 38 is generous to veterans in many ways, there is simply no apparent reason why claimants who failed to provide sufficient information to even trigger the duty to assist should receive uniquely favorable effective date treatment where the evidence that they could have identified consists of service department records. Instead, VA's interpretation of its regulations—that such favorable treatment is limited to those whose claims are frustrated through no fault of their own—is logical and reasonable and deserves deference. Accordingly, I would affirm the Board's decision on the issue of entitlement to an earlier effective date and must, therefore, respectfully dissent from the majority opinion on that matter.